CATHY A. TOOMBS, WIDOW OF JAMES M. TOOMBS, DECEASED, APPELLANT, V. DRIVER MANAGEMENT, INC., APPELLEE.

540 N.W.2d 592

Filed December 15, 1995.    No. S-95-121.

Michael A. Kelley and Christopher D. Jerram, of Kelley & Lehan, P.C., for appellant.

John W. Iliff, of Gross & Welch, P.C., for appellee.

WHITE, C.J., CAPORALE, FAHRNBRUCH, LANPHIER, WRIGHT, CONNOLLY, and GERRARD, JJ.

FAHRNBRUCH, J.

Cathy A. Toombs, widow of James M. Toombs (the decedent), petitioned the Nebraska Workers' Compensation Court for benefits because of the decedent's sudden cardiac death while he was employed as an over–the–road truckdriver for Driver Management, Inc. (DMI).

Following a trial, a Workers' Compensation Court judge dismissed Toombs' petition. That court's review panel affirmed the trial court's dismissal order. Toombs timely appealed the Workers' Compensation Court's decision to this court.

The evidential record, as a whole, supports the findings of the compensation court, and we, therefore, affirm its judgment.

## ASSIGNMENTS OF ERROR

Restated, Toombs claims that (1) the trial court erred in

denying Toombs' objection and motion to compel production of documents, receiving the deposition of defense witness Patrick Wallace into evidence over Toombs' motion to strike, and considering such testimony in its order of dismissal. Toombs then claims that (2) the Workers' Compensation Court's review panel erred in relying upon Workers' Comp. Ct. R. of Proc. 4 (1994) which Toombs claims exceeds statutory authority and is invalid.

For her third through sixth assignments of error, Toombs claims, in substance, that the trial court erred in (3) failing to find that the decedent died during the scope of his employment, (4) finding that the court would have to engage in speculation and conjecture in order to enter an award, (5) relying on the expert opinion of Dr. Michael Sketch, and (6) finding that Toombs failed to establish medical and legal causation.

## STANDARD OF REVIEW

A judgment, order, or award of the compensation court after review shall have the same force and effect as a jury verdict in a civil case. *Hemmerling v. Happy Cab Co.*, 247 Neb. 919, 530 N.W.2d 916 (1995). A judgment, order, or award of the compensation court may be modified, reversed, or set aside only upon the grounds that (1) the compensation court acted without or in excess of its powers; (2) the judgment, order, or award was procured by fraud; (3) there is not sufficient competent evidence in the record to warrant the making of the order, judgment, or award; or (4) the findings of fact by the compensation court do not support the order or award. *Id.*

Factual determinations by the Nebraska Workers' Compensation Court will not be set aside on appeal unless such determinations are clearly erroneous. *Aken v. Nebraska Methodist Hosp.*, 245 Neb. 161, 511 N.W.2d 762 (1994).

## FACTS

On July 4, 1992, the decedent, an over–the–road truckdriver for DMI, was traveling east on Interstate 70 in Missouri. An eyewitness traveling behind the decedent observed the decedent's truck leave the highway. Without stopping or slowing down, the truck continued across the shoulder and up the side of a hill and eventually rolled over on the driver's side. The

entire incident took place in a couple of seconds. The eyewitness testified that, during the incident, the decedent's truck made no "herky–jerky" or stop–and–go movements.

Paramedics arrived at the accident scene and found the decedent dead in the truck cab. An autopsy determined that the decedent died of arteriosclerotic heart disease. Among the autopsy findings were that the decedent had arteriosclerotic heart disease with marked atherosclerosis of all three major coronary arteries, old infarcts of the left ventricular wall, pulmonary edema and congestion, and congestion of the liver.

As a result of her husband's death, Toombs filed a petition in the Nebraska Workers' Compensation Court, seeking workers' compensation benefits. Toombs alleged that her husband's death arose out of and during the course of his employment with DMI.

On April 14, 1994, the parties conducted a telephonic deposition of defense witness Wallace, an independent insurance adjuster. Wallace testified as to a conversation he had with Toombs following her husband's death. Wallace acknowledged that prior to giving his deposition he reviewed his file and that without such a review, he could not have testified. At the deposition, Toombs' lawyer requested production of Wallace's entire file and ceased any further cross–examination, pending an opportunity to review Wallace's file.

On April 28, 1994, Toombs filed a motion to compel production of Wallace's file. A hearing was held regarding Toombs' motion to compel on May 9. At the hearing, Toombs asked the trial court to take the motion under advisement, and, if the court should sustain the motion, then Toombs would move to strike Wallace's testimony in its entirety. The trial court agreed and took the matter under advisement.

At trial, Toombs testified that she had a telephone conversation with her husband on July 3, 1992. She said that her husband told her that he could not unload his truck and could not pick up another load. According to Toombs, her husband was essentially stuck and unable to get home for the Fourth of July as had been promised by his employer. The Toombses had planned a golfing trip to Idaho for the Fourth of July. Toombs also stated that her husband was on the road and

away from home for 4– to 6–week runs.

Toombs offered the testimony of Dr. Randolph Ferlic, a thoracic and cardiovascular surgeon. Dr. Ferlic, testifying as an expert, stated that based upon a review of the decedent's diaries, the decedent apparently had an understanding with DMI that he could return home for the Fourth of July and that the decedent became very frustrated upon realizing that the perceived promise by DMI had been broken. According to Dr. Ferlic, the diary entry of July 3, 1992, reflects that the decedent became exceedingly stressed over what he considered to be an arbitrary and capricious decision to send him away from his home. Dr. Ferlic testified that the stress reaction caused the decedent to sustain an arrhythmia which led to death caused by ventricular fibrillation. However, Dr. Ferlic agreed in his deposition that typically hundreds of people on a daily basis face the same stress that the decedent experienced.

Dr. Michael Egger, a psychiatrist, testified as an expert that he believed that the decedent's death was related to the stress he experienced in the course of his employment duties. Dr. Egger further testified that the stress the decedent experienced immediately prior to death was greater than what others usually experience in their normal nonworking lives.

DMI offered the expert testimony of Dr. Sketch, a cardiologist. Dr. Sketch testified that, based on an autopsy report, the decedent had a severe preexisting heart disease which caused cardiac enlargement and congestive heart failure. Dr. Sketch further testified that the decedent suffered from significant coronary artery disease. Dr. Sketch described the decedent's demise as a sudden cardiac death resulting from a natural progression of his preexisting heart condition. The final event in the progression toward the decedent's death, according to Dr. Sketch, was a ventricular fibrillation of his heart which occurred in a couple of seconds. Dr. Sketch testified that emotional stress does not cause sudden cardiac death.

Following a single–judge trial, the workers' compensation court dismissed Toombs' petition. The trial court found, based upon the autopsy report, that the decedent had had a preexisting heart disease. The trial court was not persuaded by the expert opinion of Dr. Ferlic, because the court found that the opinion

was based on presumptions and inferences as to the decedent's state of mind on the date of the accident. The trial court refused to award compensation based upon speculation and conjecture. The trial court also found that the degree of the decedent's anger and frustration was not greater than that in the ordinary nonemployment life of any other person.

The trial court did not rule on Toombs' motion to compel production of Wallace's file.

Toombs applied to the Workers' Compensation Court for a three-judge review. The review panel affirmed the trial court. The review panel specifically found that the trial court was not clearly wrong in finding Dr. Sketch's testimony more credible than Dr. Ferlic's and in finding that Toombs failed to establish legal causation of her husband's death. The review panel did not find error in the trial court's evidentiary rulings. As to Wallace's file and deposition, the review panel held that Toombs did not file written objections pursuant to rule 4 of the Workers' Compensation Court.

## ANALYSIS

### MOTION TO COMPEL PRODUCTION AND RULE 4

Initially, Toombs claims the trial court erred in overruling her motion to compel production of Wallace's file, in receiving Wallace's deposition into evidence, and in considering Wallace's testimony in arriving at its dismissal order.

The record reflects that the trial court took Toombs' motion to compel production under advisement but never ruled on the motion. We have long held that a party who fails to insist upon a ruling to a proffered objection waives that objection. See, *State v. Fellman*, 236 Neb. 850, 464 N.W.2d 181 (1991); *Griffith v. Griffith*, 230 Neb. 314, 431 N.W.2d 609 (1988); *In re Estate of Kaiser*, 150 Neb. 295, 34 N.W.2d 366 (1948). Because there was no ruling on Toombs' motion to compel production of Wallace's file or to strike his deposition and because Toombs did not insist upon such rulings, the questions regarding the motion to compel production of Wallace's file and the admissibility of his deposition are not properly before this court. We need not address Toombs' assignment of error regarding the review panel's use of rule 4 because the issue

pertains to the admissibility of Wallace's deposition. Nonetheless, we are constrained to observe that appropriate judicial trial practice requires that trial judges rule on matters submitted to them in a timely fashion in order that the litigants be in a position to react to the ruling. The practice of deferring rulings on evidential, discovery, and like matters until deciding the cause on the merits and thus at a time when the litigants are no longer in a position to react to the ruling is condemned and is not to be employed.

## LEGAL CAUSATION

Toombs claims that the trial court erred in not finding that her husband died during the scope of his employment. In cases under the Workers' Compensation Act involving heart attacks, the principal issue is usually one of causation. The disability or death is not compensable unless the injury or death arose out of the employment. There is no fixed formula by which the issue may be resolved, and the issue must be determined by the facts of each case. *Leitz v. Roberts Dairy*, 237 Neb. 235, 465 N.W.2d 601 (1991).

The heart injury causation issue embraces two elements: (1) legal causation and (2) medical causation. Under the legal test, the law must define what kind of exertion satisfies the test of arising out of the employment. *Id.*

The autopsy findings and Dr. Sketch's testimony reflect that the decedent had a preexisting heart condition. In heart disease cases, a workers' compensation claimant has the burden of establishing by a preponderance of the evidence that exertion or stress in his employment contributed in some material and substantial degree to cause the heart injury. *Spangler v. State*, 233 Neb. 790, 448 N.W.2d 145 (1989). An exertion- or stress-caused heart injury to which the claimant's preexisting heart disease or condition contributes is compensable only if the claimant shows that the exertion or stress encountered during employment is greater than that experienced during the ordinary nonemployment life of the employee or any other person. *Leitz v. Roberts Dairy, supra.*

Dr. Egger testified that the stress the decedent experienced in the hours prior to his death was caused by his occupation and

that such stress was greater than that experienced during the ordinary nonemployment life of the decedent and other people generally. Dr. Egger further testified that the stress the decedent experienced materially and substantially contributed to his death.

Dr. Ferlic testified that the decedent's heart arrhythmia which resulted in his death was caused by his job–related anger and frustration. Dr. Ferlic further testified that the stress the decedent experienced is the same stress experienced every day by hundreds of people in nonoccupational settings. The trial court did not accept Dr. Ferlic's opinion on anger and frustration "because it is based on presumptions and inferences that requires [sic] the Court to award compensation on the basis of speculation and conjecture." The trial court also found the decedent's alleged anger and frustration did not constitute stress greater than that experienced during the ordinary nonemployment life of the decedent or any other person and that, therefore, Toombs failed to meet her burden of proving legal causation required by *Leitz v. Roberts Dairy, supra.*

The court further found that the sequence of events immediately preceding the decedent's truck leaving the highway supports the opinion of Dr. Sketch that the decedent's demise was a sudden cardiac death resulting from a natural progression of his preexisting heart condition and that the final event in the progression was a ventricular fibrillation. Dr. Sketch was also of the opinion that emotional stress does not cause sudden cardiac death.

From the record, it is quite apparent that there is a conflict in the testimony of the expert witnesses. When there is a conflict in testimony of expert witnesses, the trial court is entitled to accept the opinion of one expert over another. As the trier of fact, the Nebraska Workers' Compensation Court is the sole judge of the credibility of the witnesses and the weight to be given their testimony. See *Aken v. Nebraska Methodist Hosp.*, 245 Neb. 161, 511 N.W.2d 762 (1994). Also, when the record in a workers' compensation case presents conflicting medical testimony, an appellate court will not substitute its judgment for that of the compensation court. See *Leitz v. Roberts Dairy, supra.*

## MEDICAL CAUSATION

Toombs claims that the trial court erred in finding that Toombs failed to establish medical causation. For medical causation in a workers' compensation case, medical evidence must establish that the decedent's exertion, as the legal cause sufficient for compensability, in fact caused the death which is the subject of a workers' compensation claim. See *Rosemann v. County of Sarpy*, 237 Neb. 252, 466 N.W.2d 59 (1991).

The expert opinion testimony of Drs. Ferlic and Egger for Toombs and that of Dr. Sketch for DMI are conflicting as to whether stress in the decedent's employment contributed in some material and substantial degree to heart injury that led to his death. The trial court considered the evidence and found more credible Dr. Sketch's opinion that the decedent died from a natural progression of a preexisting heart condition unrelated to stress. The trial court was not clearly wrong in relying upon the testimony of Dr. Sketch as opposed to that of Drs. Egger and Ferlic. Dr. Sketch's opinion was supported by the autopsy finding of a preexisting heart condition.

## DR. FERLIC'S TESTIMONY

Toombs claims that the trial court erred in finding that it would have to engage in speculation and conjecture in order to enter an award. The record reflects that Dr. Ferlic's opinion that the decedent died from stress ventricular fibrillation on July 4, 1992, was based upon the decedent's July 3 diary entry. The trial court was not clearly wrong in finding that such an analysis required a speculative assumption that the decedent on the following day resurrected his stress level to the point of suffering ventricular fibrillation.

## CONCLUSION

The trial court was not clearly wrong in dismissing Toombs' petition for workers' compensation benefits on account of the death of her husband. Therefore, the decision of the Nebraska Workers' Compensation Court is affirmed.

AFFIRMED.