GLADYS M. JOHNSON, APPELLANT, V. HOLDREGE MEDICAL CLINIC AND CONTINENTAL INSURANCE CO., APPELLEES.

541 N.W.2d 399

Filed January 5, 1996.   No. S-94-1034.

Dale A. Romatzke, of Ross, Schroeder, Brauer & Romatzke, for appellant.

Jay C. Elliott, of Kay & Kay, for appellees.

WHITE, C.J., CAPORALE, FAHRNBRUCH, LANPHIER, WRIGHT, CONNOLLY, and GERRARD, JJ.

CAPORALE, J.

The Nebraska Workers' Compensation Court dismissed the petition for benefits under the provisions of the Nebraska Workers' Compensation Act, Neb. Rev. Stat. §§ 48–101 through 48–1,117 (Reissue 1993 & Cum. Supp. 1994), filed by the plaintiff–appellant employee, Gladys M. Johnson, against the defendant–appellee employer, Holdrege Medical Clinic, and its compensation insurance carrier, Continental Insurance Co. Claiming, in summary, that the compensation court erred in finding that the injury did not arise out of and in the course of employment, Johnson appealed to the Nebraska Court of Appeals, which affirmed the dismissal. *Johnson v. Holdrege Med. Clinic*, 3 Neb. App. 894, 534 N.W.2d 340 (1995). Johnson thereafter petitioned this court for further review. We now affirm the judgment of the Court of Appeals.

There is no factual dispute in this case; thus, the question presented, whether the injury arose out of and in the course of Johnson's employment with the clinic, is clearly one of law, in connection with which a reviewing court has an obligation to reach its own conclusions independent of those reached by the inferior courts. *Stansbury v. HEP, Inc.*, 248 Neb. 706, 539 N.W.2d 28 (1995).

Johnson lives in Holdrege, Nebraska, and has been employed at the clinic for 25 years. Her regular working hours were from 8 a.m. to 5 p.m.; however, she often arrived at the clinic before 8 a.m. so that she "could get things straightened out and get ready to go for the day so I could keep caught up with the daily things we had to do." On those occasions when she arrived at work before 8 a.m., she was paid for her time.

At approximately 6:45 a.m. on November 5, 1991, Johnson left her home, which is located about 10 blocks from the clinic, to go to work. She drove directly to a city parking lot, which is located 75 to 100 feet from the back entrance of the clinic. Upon entering the lot, she exited her automobile and walked toward the clinic along her normal route, which took her through the

Home Federal Savings & Loan parking lot to the alley leading to the clinic's back door. As she traversed the distance toward the clinic, Johnson slipped on some ice and fell in the savings and loan driveway at around 7 a.m. The point at which she fell was approximately 50 feet from the edge of the clinic.

The clinic is located in a business district; at the time of the accident, a 40-stall parking lot was maintained by the clinic as a part of its premises located across the alley directly behind, or east of, the clinic. Although employees at one time were allowed to park in this lot, for some time prior to Johnson's accident, the clinic had in place a written policy which, as a general matter, prohibited employees from parking there. The purpose of the policy was to free up parking spaces for medical staff, administrators, patients of the clinic, and tenants who leased apartments from the clinic. At about the same time as the clinic established its parking lot policy, a city map was posted which showed the available public parking. It showed four city parking lots, as well as various areas for street parking. The clinic did not require employees to park in a particular place. Rather, employees were free to park anywhere other than the clinic lot. On the streets adjacent to the west side, or front, of the clinic, parking is limited to 2 hours. Parking is not time limited east of the clinic.

Even prior to the clinic's restricted parking policy, the majority of its employees did not park in the clinic lot. Most of them realized that employee vehicles would fill the lot and leave little room for patients. The restricted policy was aimed at the few employees who parked in the lot and was designed to get them to park elsewhere.

Johnson testified that before the restricted parking policy was instituted, she parked in the clinic's lot. In response to the policy, she began parking in the city lot some 10 to 12 years ago. Johnson was aware that the city of Holdrege owned the lot in which she customarily parked and that the clinic did not require her to park in this particular lot. She was also aware that there were other parking areas available for her use.

Johnson also testified that prior to the day of the accident, there were occasions where she would walk to work from her home. On these occasions, she traveled the same route as she

did on the day of the accident. Both before and after the accident, she sometimes parked her vehicle on a street located east of the city parking lot and would follow the same route as she usually did.

The clinic administrator testified that the city parking lot used by Johnson on the day of the accident was the "lot of choice" for clinic employees, since it is the closest one to the clinic. In addition, he testified that he was aware many different employees who park in that lot follow the same general route that Johnson customarily followed to reach the back entrance of the clinic. There was no clinic policy dictating the route an employee was to take from the city parking lot to the clinic entrance.

The act compensates injury caused an employee "by accident . . . arising out of and in the course of his or her employment . . . ." § 48–101. Accord, *Mauser v. Douglas & Lomason Co.*, 192 Neb. 421, 222 N.W.2d 119 (1974); *Hahl v. Heyne*, 156 Neb. 599, 57 N.W.2d 137 (1953); *Nelms v. Mahoney*, 147 Neb. 626, 24 N.W.2d 558 (1946). The phrase "arising out of" describes the accident and its origin, cause, and character, i.e.; whether it resulted from the risks arising within the scope of the employee's job. The phrase "in the course of" refers to the time, place, and circumstances surrounding the accident. The two phrases are conjunctive, and the claimant must establish by a preponderance of the evidence that both conditions exist. *Union Packing Co. v. Klauschie*, 210 Neb. 331, 314 N.W.2d 25 (1982).

In *Acton v. Wymore School Dist. No. 114*, 172 Neb. 609, 111 N.W.2d 368 (1961), we held that one who had a fixed place of employment and who, while on the way to work, was injured when she slipped and fell on city property at a point less than 2 feet from the employer's premises had not sustained an injury which arose in the course of her employment. See, also, *McDonald v. Richardson County*, 135 Neb. 150, 280 N.W. 456 (1938) (employee injured on driveway located on employer's premises while leaving employment sustained injury arising out of employment); *Siedlik v. Swift & Co.*, 122 Neb. 99, 239 N.W. 466 (1931) (employee injured while stepping into hole on public street near employer's premises did not sustain injury arising

out of employment).

Johnson recognizes our current "premises" rule, but invites us to reexamine and overrule it.

Obviously, when a bright-line rule is adopted, there will always be cases that are very close to each side of the line. But not only is such the nature of much of the law, flexible rules frequently produce equally arbitrary decisions. As pointed out in 1 Arthur Larson & Lex K. Larson, The Law of Workmen's Compensation § 15.12(b) at 4-12 to 4-15 (1995):

> The perils that beset any jurisdiction which abandons the security of the premises rule are dramatically illustrated by the parallel stories that unfolded in Michigan and New Jersey, beginning in 1972, and coming full circle about eight years later in both states. Although both are again safely within the majority fold, the story is well worth retelling, together with the **Treatise's** persistent and emphatic warnings, for the benefit of any other states that are under pressure to poke supposedly harmless holes in the premises dike. . . .
>
> The Michigan case was *Fischer v. Lincoln Tool & Die Co.*[, 37 Mich. App. 198, 194 N.W.2d 476 (1971).] Claimant's employer provided no parking facilities for employees, and expected them to park in the public street. After doing so, claimant proceeded to his place of work, and slipped and fell on some ice on the public sidewalk adjoining the employer's property. The court held that, under such a situation, where the employer expected employees to park in the public street, the adjacent area should be considered part of the employer's premises and a finding below that the claimant was injured while upon employer's premises should be affirmed.
>
> Somewhat similar was the New Jersey case, *Dinardo v. Newark Bd. of Educ.*[, 118 N.J. Super. 536, 289 A.2d 259 (1972).] Claimant was injured after work when her heel caught in a crack in a public sidewalk adjacent to the school building where she worked. Claimant was on her way to a bus stop when the accident occurred. The court held the injury compensable for a number of reasons. It indicated that claimant was in an area where she might

reasonably be and at the time when her presence there would normally be expected. Also, since the injury would have been compensable if claimant had been on her way to a parking lot to pick up her car, she should not be denied compensation because she was using public transportation. The court further argued that using public transportation was a benefit to both the general public and the employer, and emphasized the incongruity of compensating the injury if she had been walking to the parking lot and not compensating if walking to the bus stop. An award of compensation was affirmed.

The *Dinardo* and *Fischer* cases supply classical examples . . . of making law by measuring only the distance to the last precedent while completely losing sight of the essential principle involved in the rule. Here we see the first step in the direction of the erosion of the premises rule by this treacherous technique of selecting some past expansion and then exclaiming over how unfair it is to draw a distinction between two situations that seem so much alike. Had the intermediate New Jersey and Michigan courts really thought through where this process would end? In *Dinardo*, the comparison was between walking to a parking lot and walking to public transportation. Now suppose claimant has parked his car in the public street six blocks from the school. Could walking to this parking space be distinguished from walking to a bus stop? Michigan, in *Fischer*, had already given an answer. Indeed, suppose claimant was not walking to a car or bus at all, but simply walking home. Assuming the distance was no greater than that to the bus stop, how could this claimant be denied compensation merely because he did not happen to need vehicular transportation? Next suppose that the walking distance was a little longer than that to public transportation—was the court going to draw some imaginary line and say that only the first six blocks were covered? If a seven–block case came up, would the court have the audacity to issue a denial, when only one block separated the two cases? Was Michigan going to distinguish between a sidewalk

adjoining the employer's property and a sidewalk a block away, when this was the nearest street parking available? It hardly needs to be added that the rule of this *Dinardo* case could not be confined to schools and teachers. It must equally apply to offices in crowded downtown areas, factories, construction sites, and any other work premises. In short, there was no stopping the process started by these decisions short of complete demolition of the premises rule, with all the impossible questions this would bring in its wake. Every night millions of people will emerge from factory gates, office buildings, and school yards. Some go straight home; some go shopping; some head for a tavern. Hundreds of them are involved in accidents at varying distances from the premises and at varying degrees of deviation from the direct route home. Two things are certain: first, in the great majority of cases, no one will ever be able to prove whether the claimant was really going straight home at the time of the accident; and second, the source of the hazard will almost never be one distinctly associated with the employment, although here again by gradual extension of the "arising" cases the court might well end by covering all traffic accidents, falls on ice, and the like.

No one pretends that there is a theoretical, ethical, or intellectual reason for the premises rule. The real reason for the rule is the impracticality of drawing another line at such a point that the administrative and judicial burden of interpreting the rule would not be unmanageable. The controlling rule is that where a statute has been judicially construed and that construction has not evoked an amendment, it will be presumed that the Legislature has acquiesced in the court's determination of the Legislature's intent. *Mayfield v. Allied Mut. Ins. Co.*, 231 Neb. 308, 436 N.W.2d 164 (1989); *Nelson v. Dolan*, 230 Neb. 848, 434 N.W.2d 25 (1989); *Erspamer Advertising Co. v. Dept. of Labor*, 214 Neb. 68, 333 N.W.2d 646 (1983). See, also, *Arant v. G. H., Inc.*, 229 Neb. 729, 428 N.W.2d 631 (1988) (where Legislature had repealed dramshop liability statutes, such liability would not be imposed by judicial fiat).

Accordingly, we decline Johnson's invitation to overrule our

prior interpretation of the Legislature's intent, and affirm the judgment of the Court of Appeals.

AFFIRMED.

GERRARD, J., concurring.

While I concur with the majority's judgment in *this* case, I write separately because I do not believe that the premises rule should be a bright–line rule for which there is never an exception. The premises rule is, of course, one subcategory of the familiar "going to and from work" rule in workers' compensation cases.

## I. "GOING TO AND FROM WORK" RULE

In Nebraska, the rule is that an injury sustained by an employee while going to and from work, at a fixed place of employment, does not arise out of and in the course of employment, subject to a few limited exceptions. See, *P.A.M. v. Quad L. Assocs.*, 221 Neb. 642, 380 N.W.2d 243 (1986); *Kopfman v. Freedom Drilling Co.*, 220 Neb. 323, 370 N.W.2d 89 (1985) (transportation furnished to employee by employer either incident to employment contract or because of custom of job operates to bring employee within scope of employment during time of transportation); *Butt v. City Wide Rock Exc. Co.*, 204 Neb. 126, 281 N.W.2d 406 (1979) (exception when transportation to place of work is furnished by employer and injury occurs while worker is being transported in vehicle under control of employer); *Schademann v. Casey*, 194 Neb. 149, 231 N.W.2d 116 (1975).

In *Acton v. Wymore School Dist. No. 114*, 172 Neb. 609, 111 N.W.2d 368 (1961), we held that a school employee, who was injured when she slipped and fell on a city sidewalk which was 1.78 feet from the school district's property line, had not sustained an injury which arose in the course of her employment because the accident occurred *off the employer's premises* and, thus, was subject to the "going to and from work" rule.

However, Neb. Rev. Stat. § 48–101 (Reissue 1993) compensates injuries caused to an employee "by accident . . . arising out of and in the course of his or her employment . . . ." First, the act does not say, as often paraphrased, that the employee must have been in the course of her employment; it

says that the *injury* must arise in the course of the employment. Second, the verb used in the act is not to "occur" in the course of employment, but to "aris[e] out of" the course of employment, which in a close case often makes a difference. See 1 Arthur Larson & Lex K. Larson, The Law of Workmen's Compensation § 14.00 (1995).

The real test of compensability should not be based solely on whether an accident occurs *on the employer's premises*; but, instead, if a distinct "arising out of" or causal connection exists between the conditions under which a claimant must approach and leave the work premises and the occurrence of an injury, the injury should be compensable. See *id.* § 15.15.

### 1. RECOGNIZED EXCEPTION TO RULE

A well-recognized exception to the "going to and from work" rule is pointed out thusly in 1 Larson & Larson, *supra*, § 15.14(a) at 4–57: "One category in which compensation is almost always awarded is that in which the employee travels along or across a public road between two portions of his employer's premises, whether going and coming, or pursuing his active duties." See, e.g., *Hughes v. Decatur General Hosp.*, 514 So. 2d 935 (Ala. 1987) (decedent killed in public street between employer's main premises and employer's parking lot); *Knoop v. Industrial Commission*, 121 Ariz. 293, 589 P.2d 1325 (Ariz. App. 1978) (employee fell and was injured crossing public street between employer's building and employer's parking lot); *State Fund v. Walter*, 143 Colo. 549, 354 P.2d 591 (1960) (employee injured on public street separating employer's premises and parking lot); *Campbell v. Gates Rubber Company*, 526 P.2d 679 (Colo. App. 1974) (employee slipped on ice and fell while walking on sidewalk between employer's premises and parking lot owned and maintained by employer) (citing *State Fund v. Walter, supra*); *West Point Pepperell, Inc. v. McEntire*, 150 Ga. App. 728, 258 S.E.2d 530 (1979), *cert. denied* (employee struck by car while crossing street between employer's premises and employer-owned parking lot); *Gray Hill, Inc. v. Industrial Com.*, 145 Ill. App. 3d 371, 495 N.E.2d 1030 (1986), *cert. denied* 112 Ill. 2d 574, *cert. denied* 479 U.S. 1089, 107 S. Ct. 1298, 94 L. Ed. 2d 154 (1987) (employee fell

on public sidewalk between entrance to employer's premises she was instructed to use and her parking lot); *Thomasee v. Liberty Mut. Ins. Co.*, 385 So. 2d 1219 (La. App. 1980), *writ denied* 392 So. 2d 675 (La. 1980) (employee fell on steps adjacent to employer's premises while walking from parking lot where employee had been directed to park); *Wiley Mfg. Co. v. Wilson*, 280 Md. 200, 373 A.2d 613 (1977) (employee struck by train while taking one of two alternate routes to parking lot); *Matter of Gaik v. National Aniline Div.*, 5 A.D.2d 1039, 173 N.Y.S.2d 409 (1958) (employee injured while walking to employer–owned parking lot two blocks from employer's premises); *Griffin v. General Motors*, 39 Ohio St. 3d 79, 529 N.E.2d 436 (1988) (employee injured while crossing driveway between employer's plant and its parking lot after she had finished work for the day); *Swanson v. General Paint Company*, 361 P.2d 842 (Okla. 1961) (employee killed while crossing public highway between work premises and parking lot furnished by employer's landlord); *Willis v. State Accident Insurance Fund*, 3 Or. App. 565, 475 P.2d 986 (1970) (university dean slipped and fell in public area while walking from university parking lot to his place of work); *Hreha v. Harry Sugerman, Inc.*, 482 Pa. 402, 393 A.2d 1168 (1978) (employee injured crossing street between employer's parking lot and employer's premises); *Epler v. North Am. Rockwell Corp.*, 482 Pa. 391, 393 A.2d 1163 (1978) (employee killed while crossing street to parking lot which city required employer to provide and in which employer required employee to park); *Branco v. Leviton Mfg. Co., Inc.*, 518 A.2d 621 (R.I. 1986) (employee injured crossing street between employer's plant and employer owned and controlled parking lot in which employee was specifically directed to park); *Lollar v. Wal–Mart Stores, Inc.*, 767 S.W.2d 143 (Tenn. 1989) (employee injured while walking to employee designated parking area in employer's parking lot generally open to public).

2. PROBLEM WITH BRIGHT–LINE PREMISES RULE ANALYSIS

Using hypothetical facts similar to those in the instant case as an example: If a medical clinic owns or provides an employee parking lot across the street and requests that employees park in that parking lot, and an employee slips and falls while crossing

the street, then a distinct causal connection exists between an employer–created condition and the occurrence of an injury under the reasoning of a majority of jurisdictions. By owning or sponsoring a parking lot not contiguous to the working premises, an employer creates the condition whereby an employee necessarily must encounter the hazards lying between the two employer premises. Thus, in such a case, there is a distinct "arising out of" or causal connection between the conditions under which an employee must approach and leave the premises and the occurrence of the injury.

However, if we were to apply the bright–line premises rule to the above set of facts, an employee would recover if she slips and falls on the clinic premises or in the clinic–owned parking lot across the street, but not if she falls while she is crossing the public street. There is no logical reason, based on a causal connection analysis, to find that an injury sustained in a parking lot on either side of the street "arises out of" the course of employment and is compensable, but that the same injury does not "arise out of" the course of employment if the accident occurs on a public street or sidewalk connecting the two parking lots.

Of course, the above hypothetical is another case for another day, but it illustrates the problem of trying to fit every set of facts into a bright–line premises rule. Our decisionmaking should be based on a distinct "arising out of" or causation analysis rather than on applying bright–line rules for the sake of administrative ease.

### 3. APPLICATION OF CAUSAL CONNECTION ANALYSIS

In the instant case, Johnson was not encountering hazards between two employer premises when she sustained her injury. Nor was she traveling from what could fairly be characterized as an employer–sponsored parking lot to her place of employment. Johnson's employer did not provide a parking lot or require her to park in a particular place. Johnson could have parked anywhere she desired, or she could have walked to work from her home. Clearly, the hazard encountered by Johnson which caused her injury was not one created by the clinic. There was no distinct causal connection between her work conditions

and the occurrence of her injury in the Home Federal Savings & Loan parking lot.

## II. CONCLUSION

Therefore, I concur in the result reached by the majority, but I would henceforth abandon the inflexible premises rule set forth in *Acton v. Wymore School Dist. No. 114*, 172 Neb. 609, 111 N.W.2d 368 (1961), and, instead, analyze our cases dealing with the "going to and coming from work" rule by determining whether a distinct causal connection exists between an employer–created condition and the occurrence of an injury.

WRIGHT and CONNOLLY, JJ., join in this concurrence.