RICHARD E. COX, APPELLEE, V. FAGEN INC. AND ST. PAUL FIRE AND MARINE INSURANCE COMPANY, APPELLANTS.

545 N.W.2d 80

Filed March 22, 1996.   No. S-95-673.

Douglas J. Peterson and Samantha B. Trimble, of Knudsen, Berkheimer, Richardson & Endacott, for appellants.

James R. Harris and Lee S. Loudon, of Harris Law Offices, for appellee.

WHITE, C.J., CAPORALE, FAHRNBRUCH, LANPHIER, WRIGHT, CONNOLLY, and GERRARD, JJ.

PER CURIAM.

The Nebraska Workers' Compensation Court ordered the defendants–appellants, the employer Fagen Inc. and its workers' compensation carrier, St. Paul Fire and Marine Insurance Company, to pay the plaintiff–appellee, the employee Richard

E. Cox, benefits as detailed later herein because of injuries Cox sustained in putting on a pair of coveralls while at his workplace. The defendants thereupon appealed to the Nebraska Court of Appeals, arguing, in summary, that the compensation court erred in (1) concluding that Cox suffered a compensable injury, (2) calculating his wage rate, and (3) determining the benefits due him. On our own motion, we removed the appeal to this court.

## SCOPE OF REVIEW

A judgment, order, or award of the compensation court may be modified, reversed, or set aside only upon the grounds that (1) the compensation court acted without or in excess of its powers; (2) the judgment, order, or award was procured by fraud; (3) there is not sufficient competent evidence in the record to warrant the making of the judgment, order, or award; or (4) the findings of fact by the compensation court do not support the order or award. *Pettit v. State, ante* p. 666, 544 N.W.2d 855 (1996); *Toombs v. Driver Mgmt., Inc.*, 248 Neb. 1016, 540 N.W.2d 592 (1995); *Buckingham v. Creighton University*, 248 Neb. 821, 539 N.W.2d 646 (1995); Neb. Rev. Stat. § 48–185 (Reissue 1993).

## FACTS

Cox began working for Fagen in September 1993 as an electrician. His duties included lifting large amounts of wire and pulling the wire through pipes, tasks which required frequent bending, walking, twisting, and climbing.

On December 27, 1993, Cox drove to a jobsite to check a temporary power board. When he arrived at the building, he got out of the truck, went inside, took off his one–piece coveralls, and inspected the board. Afterward, he went to put his coveralls back on; as he lifted his leg to do so, he felt a sharp pain in his back and fell against some crates. Cox testified that he had lifted his leg 3 to 3¹/₂ feet to put on his coveralls and that this process involved bending and twisting. A fellow employee came upon Cox after his injury and drove him to the office, where the injury was reported. Cox was then taken to a hospital emergency room for treatment.

Following his hospital treatment, Cox sought treatment from an orthopedist, who ordered a study of Cox's lumbar area, which was performed on January 31, 1994. The study indicated some bulging of two lumbar disks and a small protrusion of another lumbar disk which was touching the left anterior aspect of the thecal sac. Because the study indicated that Cox could have nerve trouble and was not getting any better with the treatment provided, the orthopedist referred Cox to a neurologist. The neurologist advised the orthopedist that Cox had a nerve root irritation in the low back and that the study was strongly suggestive of a herniated disk at L1–2. The orthopedist considered the neurologist's findings to be significant in that they probably indicated the cause of Cox's pain.

Prior to Cox's workplace injury, he had seen a chiropractor for treatment for pain in his low back and left leg. The chiropractor treated Cox from June 18 through July 6, 1992, and on March 10 and May 3 and 17, 1993. The orthopedist testified that the injuries Cox reported to the chiropractor were the same injuries that Cox sustained on December 27, 1993.

In March 1994, Fagen offered Cox what Fagen considered to be a light–duty job; as he needed the money, Cox decided to try it, despite the fact that the orthopedist had advised him to remain off work until May 31. On March 29, 1994, Cox reported to work. His duties included "terminating motors," an activity which required bending and twisting on a constant basis. After that day's work, Cox experienced pain in his back and had trouble sleeping, but reported to work the next day. There is conflicting testimony as to what then transpired, but it is undisputed that Cox did not return to work thereafter. Cox testified that after reporting to work the second day, he asked for a job that did not require as much twisting and bending, but that his request was denied and he went home. A former Fagen employee stated that the reason Cox wanted a different job was because it was too cold to terminate motors outside. On March 30, Cox wrote Fagen a letter offering to return if there was light–duty work, but never received a response.

The vocational rehabilitation analysis agreed to by Cox and Fagen, and subsequently approved by the compensation court,

called for Cox to attend school at Southeast Community College, pursuing a degree in electronics service technology.

The parties also agreed that an analysis of Cox's loss of earning capacity should be made. In performing the analysis, it was assumed that Cox was earning $600 per week at the time of his injury. Based upon the assumption that Cox was receiving $600 per week, the analyst concluded that Cox had suffered a 60–percent loss of earning capacity because of the injury he suffered on December 27, 1993. (The compensation court found that at the time of the injury, Cox was receiving an average weekly wage of $670.23.)

## COMPENSABILITY OF INJURY

In urging that Cox did not sustain a compensable injury, the defendants assert that the injury did not result from an accident arising out of and in the course of employment, as required by Neb. Rev. Stat. § 48–101 (Reissue 1993). See, *Johnson v. Holdrege Med. Clinic, ante* p. 77, 541 N.W.2d 399 (1996); *Mauser v. Douglas & Lomason Co.*, 192 Neb. 421, 222 N.W.2d 119 (1974).

We have held that for purposes of the foregoing statute, an injury is accidental if either its cause was accidental in character or its effect was unexpected or unforeseen, and the injury happened suddenly and violently. *Crosby v. American Stores*, 207 Neb. 251, 298 N.W.2d 157 (1980); *Wolfe v. American Community Stores*, 205 Neb. 763, 290 N.W.2d 195 (1980); *Eliker v. D. H. Merritt & Sons*, 195 Neb. 154, 237 N.W.2d 130 (1975). The occurrence must also produce at the time objective symptoms of injury. *Union Packing Co. v. Klauschie*, 210 Neb. 331, 314 N.W.2d 25 (1982). In addition,

> [t]he claimant shall have a burden of proof to establish by a preponderance of the evidence that such unexpected or unforeseen injury was in fact caused by the employment. There shall be no presumption from the mere occurrence of such unexpected or unforeseen injury that the injury was in fact caused by the employment.

Neb. Rev. Stat. § 48–151(2) (Reissue 1993).

Here, there is no question that the act of putting on his coveralls produced in Cox an effect which was unexpected or

unforeseen, which happened suddenly and violently, and which produced at the time objective symptoms of injury. Moreover, there is sufficient competent evidence in the record to support the trial judge's finding that Cox's injury was in fact caused by his employment. Thus, the evidence clearly establishes that an accident occurred, as that term is defined in § 48–101.

The question, then, is whether the accident arose out of and in the course of Cox's employment with Fagen. As recently reaffirmed, there are two components to the "arising out of and in the course of employment" test. The term "arising out of" describes the accident and its origin, cause, and character, that is, whether it resulted from the risks arising within the scope of the employee's job. The term "in the course of" refers to the time, place, and circumstances surrounding the accident. The two phrases are conjunctive, and the claimant must establish by a preponderance of the evidence that both conditions exist. *Johnson, supra*; *Union Packing Co., supra.*

The "in the course of" requirement has been defined as testing the "work connection as to time, place, and activity; that is, it demands that the injury be shown to have arisen within the time and space boundaries of the employment, and in the course of an activity whose purpose is related to the employment." *Moore v. The Sisk Co.*, 216 Neb. 451, 454, 343 N.W.2d 767, 769 (1984). In his treatise, Professor Arthur Larson notes that the "course of employment embraces all activities connected with changing clothes before and after work . . . . Similar acts during work hours are also of course covered . . . ." 1A Arthur Larson & Lex K. Larson, The Law of Workmen's Compensation § 21.61 at 5–54 and 5–56 (1995). As Cox was putting on the coveralls during work hours, his injury occurred in the course of employment. As a consequence, this requirement is satisfied.

That brings us to the "arising out of" requirement, which is primarily concerned with causation. Determination of causation is ordinarily a matter for the trier of fact. *Tarvin v. Mutual of Omaha Ins. Co.*, 238 Neb. 851, 472 N.W.2d 727 (1991); *Heiliger v. Walters & Heiliger Electric, Inc.*, 236 Neb. 459, 461 N.W.2d 565 (1990). Factual determinations by the compensation court will not be set aside on appeal unless such

determinations are clearly erroneous. *Toombs v. Driver Mgmt., Inc.*, 248 Neb. 1016, 540 N.W.2d 592 (1995); *Aken v. Nebraska Methodist Hosp.*, 245 Neb. 161, 511 N.W.2d 762 (1994). In this case, the compensation court determined that the injury arose out of Cox's employment.

On appeal, the defendants assert the compensation court erred in deciding this causation issue against them. The defendants find significant the fact that Cox had a preexisting back condition and that when Cox sustained his injury, he was engaged in what the defendants termed "everyday activity." Even if we were to agree with the defendants' characterization that Cox was engaged in "everyday activity," the defendants nonetheless ask this court to ignore our prior holdings which are consistent with a majority of jurisdictions that have considered the issue.

Professor Larson describes situations such as Cox's as mixed risks—that is, where risks personal to the employee, such as a preexisting back condition, mix with those risks distinctively associated with employment. "The law does not weigh the relative importance of the two causes, nor does it look for primary and secondary causes; it merely inquires whether the employment was a contributing factor. If it was, the concurrence of the personal cause will not defeat compensability." 1 Larson & Larson, *supra*, § 7.40 at 3–14.

> Injuries arising out of risks or conditions personal to the claimant do not arise out of the employment unless the employment contributes to the risk or aggravates the injury. When the employee has a preexisting physical weakness or disease, this employment contribution may be found . . . in placing the employee in a position which [precipitates] the effects of the condition by strain or trauma.

*Id.*, § 12.00 at 3–349. "Preexisting disease or infirmity of the employee does not disqualify a claim under the 'arising out of employment' requirement if the employment aggravated, accelerated, or combined with the disease or infirmity to produce the death or disability for which compensation is sought." *Id.*, § 12.21 at 3–381.

Moreover, in a case where a claimant with a history of back problems reinjured his back while moving a refrigerator for his employer, this court held:

> In a workers' compensation case involving a preexisting condition, the claimant must prove by a preponderance of evidence that the claimed injury or disability was caused by the claimant's employment and is not merely the progression of a condition present before the employment–related incident alleged as the cause of the disability. [Citations omitted.] However, a workers' compensation claimant may recover when an injury, arising out of and in the course of employment, combines with a preexisting condition to produce disability, notwithstanding that in the absence of the preexisting condition no disability would have resulted.

*Miner v. Robertson Home Furnishing*, 239 Neb. 525, 531, 476 N.W.2d 854, 859 (1991).

We do not accept the defendants' characterization that Cox was performing "everyday activity" when he sustained his injury. Putting on coveralls over workboots and other heavy clothing at a jobsite is clearly not an everyday nonemployment activity. However, even if Cox's injury would have been sustained during what could fairly be considered "everyday activity," if this everyday activity constituted a risk contributed by employment, and the activity combined with a preexisting condition to cause injury, then compensation is due.

It cannot be said that the compensation court was clearly erroneous in the determination that Cox's injury was caused by his employment. It was Cox's employment which put him in the position which precipitated the trauma he suffered. At a minimum, Cox's employment combined with his preexisting condition to produce the disability for which he sought compensation. The medical evidence is such that the compensation court as the finder of fact could reasonably conclude that the act of putting on the coveralls caused the injury. In view of that medical evidence, it cannot be said that the compensation court erred in finding that Cox's injury arose out of his employment with Fagen.

## WAGE RATE

In contending that the compensation court erred in failing to consider Cox's past wage history when calculating his loss of earning capacity benefits, the defendants argue that Cox's position with Fagen was only temporary and that, as such, his past wage history, in which he made less than he was making at Fagen, should have been considered.

Neb. Rev. Stat. § 48-121(2) (Reissue 1993) of the Nebraska Workers' Compensation Act provides in pertinent part: "For disability partial in character . . . the compensation shall be sixty-six and two-thirds percent of the difference between the wages received at the time of the injury and the earning power of the employee thereafter . . . ." The statute does not provide for consideration of past wage history, whether the claimant was employed in a temporary position or otherwise.

The compensation court therefore did not err in considering only the wages Cox was receiving at the time of his injury; to do otherwise would have been to contradict the explicit wording of the statute.

## BENEFITS DUE

Finally, the defendants claim that the compensation court erred in concluding that Cox was entitled to temporary total disability benefits after March 30, 1994, and to permanent partial disability benefits and vocational rehabilitation.

In urging that Cox was not entitled to temporary total disability benefits after March 30, 1994, the defendants point out that Fagen offered Cox a position that he could return to on March 29, 1994, which was within his physical limitations and that Cox quit that position the following day, thereby waiving any future claim for temporary total disability from that date.

The compensation court found that Cox continued to be temporarily totally disabled until May 25, 1994, the day he was released to work by the orthopedist. (Actually, the orthopedist stated in his deposition that he did not release Cox to work until May 31, 1994.) Whether a workers' compensation claimant has sustained a disability which is total or partial and which is temporary or permanent is a question of fact. *Schmid v. Nebraska Intergov. Risk Mgt. Assn.*, 239 Neb. 412, 476 N.W.2d

243 (1991); *Roan Eagle v. State*, 237 Neb. 961, 468 N.W.2d 382 (1991). Generally, whether a worker has reached maximum medical improvement is a question of fact. *Foreman v. State*, 240 Neb. 716, 483 N.W.2d 752 (1992). In addition, whether the job offered by Fagen to Cox was within Cox's physical limitations is also a question of fact.

The evidence adduced showed that the orthopedist did not release Cox to work until May 25, 1994, and Cox himself testified that the job provided him by Fagen was too strenuous, because it involved too much bending, twisting, and walking. He also testified that he requested a different position without such strain, but when such request was denied, he left. Based on this evidence, the compensation court's findings with respect to the period of Cox's temporary total disability cannot be said to be clearly erroneous.

The defendants also urge that "[a]ny future loss of earning capacity should be considered de minimus [sic] in light of the fact that [Cox] had the opportunity to return to [Fagen] earning the same rate of pay as an electrician." Brief for appellants at 31.

Thus, according to the defendants, the compensation court erred in awarding Cox permanent partial disability benefits and vocational rehabilitation. But as stated earlier, whether Fagen offered Cox a job on March 29, 1994, that was within his physical limitations was a question of fact. Implicit in the compensation court's finding that Cox was temporarily totally disabled through May 25, 1994, is that Cox did not have the opportunity to return to Fagen at the same rate of pay as an electrician. The compensation court therefore did not err in awarding Cox the benefits it awarded.

## CONCLUSION

For the foregoing reasons, the award of the compensation court is affirmed. Cox is awarded the sum of $2,500 to be applied to the services of his attorneys in this court, including the appearance at oral argument.

AFFIRMED.

CAPORALE, J., dissenting.

I agree that the plaintiff employee, Richard E. Cox, suffered an injury as the consequence of an accident which arose "in the course of" his employment with the defendant employer, Fagen Inc. However, I respectfully dissent, because by characterizing the putting on of one's coveralls as something other than an everyday activity and oversimplifying the issues concerning the cause of the injury, the majority erroneously concludes that the evidence supports as well the finding of the Workers' Compensation Court that the accident also arose "out of" the employment. In doing so, the majority has transformed a system designed to compensate work–caused injuries into one which, except for heart attacks and strokes, compensates any injury which manifests itself at work, regardless of the cause.

In heart attack cases, *Leitz v. Roberts Dairy*, 237 Neb. 235, 465 N.W.2d 601 (1991), and stroke cases, *Smith v. Fremont Contract Carriers*, 218 Neb. 652, 358 N.W.2d 211 (1984), where we recognize there is an element of personal risk involved, we have utilized the split test of legal and medical causation discussed in 1A Arthur Larson & Lex K. Larson, The Law of Workmen's Compensation § 38.83(a) (1995). This test embraces two elements: (1) legal cause and (2) medical cause. *Leitz* states at 237 Neb. at 241, 465 N.W.2d at 605, quoting Larson, *supra*: " 'Under the legal test, the law must define what kind of exertion satisfies the test of "arising out of the employment." Under the medical test, the doctors must say whether the exertion (having been held legally sufficient to support compensation) in fact caused this [injury].' " See, also, *Smith, supra*. But see *Morton v. Hunt Transp.*, 240 Neb. 63, 480 N.W.2d 217 (1992) (disapproved split test in cases of carpal tunnel syndrome, as syndrome shares none of difficulties of etiology surrounding heart attacks). In *Sandel v. Packaging Co. of America*, 211 Neb. 149, 154–55, 317 N.W.2d 910, 914 (1982), we observed:

> "The exertion 'greater than nonemployment life' test has been applied by this court *only* in cases involving heart attacks allegedly caused by the activities or stress of employment. . . .

"The rationale for the rule is discussed at some length in *Sellens* [*v. Allen Products Co., Inc.*, 206 Neb. 506, 293 N.W.2d 415 (1980)]. Where a person suffers from a preexisting condition which he claims is aggravated by his employment, he has an increased burden of proving causation. The exertion 'greater than nonemployment life' test is simply an application of the increased burden of proof required in preexisting condition cases to the unique problems of proving causation of a myocardial infarction. We find no reason to extend the rule to other cases where the proof of causation is not usually as complex."

(Emphasis in original.)

However, the enhanced degree of proof in preexisting condition cases was expressly overruled in *Heiliger v. Walters & Heiliger Electric, Inc.*, 236 Neb. 459, 461 N.W.2d 565 (1990). In addition, this court stated in *Leitz, supra*, that the "exertion greater than nonemployment life" test is not an application of the enhanced degree of proof, but, rather, a function of proximate or legal causation.

Larson's treatise correctly urges use of the split test of legal and medical causation in areas other than heart attack cases, observing that "what is being attempted here is a rule that will have general validity and practicality. . . . [T]here are cases on the books that make one wonder whether the cerebral hemorrhage or disc protrusion might not have been just as much the result of natural progression as any coronary thrombosis." 1A Arthur Larson & Lex K. Larson, The Law of Workmen's Compensation § 38.83(e) at 7–340 (1995).

Thus, the split test of legal and medical causation is properly utilized whenever an employee contributes some personal element of risk to the performance of a task involved in daily living.

" '[W]hen the employee contributes some personal element of risk . . . the employment must contribute something substantial to increase the risk. The reason is that the employment risk must offset the causal contribution of the personal risk. . . .' " . . . This is necessary to break any causal connection between the natural progression of the preexisting condition or disease

and the injury at the workplace. Otherwise, the fact that the . . . injury occurred at work would be strictly fortuitous.

*Leitz*, 237 Neb. at 242, 465 N.W.2d at 606.

A number of courts have held that everyday activities performed at work which trigger preexisting conditions do not satisfy the legal causation requirement. *United Parcel Service v. Fetterman*, 230 Va. 257, 336 S.E.2d 892 (1985) (bending over to tie shoelace); *Southern Bell Tel. & Tel. Co. v. McCook*, 355 So. 2d 1166 (Fla. 1977) (employee, while sitting on toilet, bent over to pick up toilet tissue); *Barrett v. Herbert Engineering, Inc.*, 371 A.2d 633 (Me. 1977) (walking at normal gait to retrieve tools); *Board of Trustees v. Industrial Com.*, 44 Ill. 2d 207, 254 N.E.2d 522 (1969) (turning in chair); *Market Food Distrib., Inc. v. Levenson*, 383 So. 2d 726 (Fla. App. 1980) (bending over to pull out desk drawer); *Davis v. Houston General Ins. Co.*, 141 Ga. App. 385, 233 S.E.2d 479 (1977) (putting on coat); *Hansel & Gretel Day Care v. Indus. Comm'n*, 215 Ill. App. 3d 284, 574 N.E.2d 1244 (1991) (arising from chair); *Hopkins v. Industrial Comm'n*, 196 Ill. App. 3d 347, 553 N.E.2d 732 (1990) (turning in chair).

The basis for these holdings is that risk of injury in engaging in the various everyday activities by the injured claimants was not in any way peculiar to or increased by the employment, and the injuries resulted from hazards to which the employees would have been equally exposed apart from the employment or a risk personal to the employees. Thus, it is clear that the split test of legal and medical causation is the proper test to be applied in cases of injury resulting during the performance of everyday activities at work.

In order to satisfy the split test, the employee must first establish legal causation. "[T]he employee must prove that he or she suffered some work–related stress or exertion which is greater than that in the ordinary nonemployment life of the employee or any other person." *Leitz v. Roberts Dairy*, 237 Neb. 235, 242, 465 N.W.2d 601, 606 (1991). " ' "Note that the comparison is not with *this employee's* usual exertion *in his employment*, but rather with the exertions present in the normal

*non-employment* life of this or any other person." ' "
(Emphasis in original.) *Id.*

In addition to establishing legal causation, the employee must establish medical causation. "[M]edical causation is established by a showing by the preponderance of the evidence that the employment contributed in some material and substantial degree to cause the injury." *Id.* at 244, 465 N.W.2d at 607.

The compensation court impliedly found that Cox brought an element of personal risk to the activity in that he had a preexisting back condition, specifically noting that Cox had been previously treated by the chiropractor and that the orthopedist stated that the injuries he treated after the accident were the same as the injuries the chiropractor treated. The compensation court went on to state that

> [the orthopedist] diagnoses the plaintiff's injury as a lumbar strain with nerve root irritation and opines that said injury and resulting permanent impairment of 7 percent and physical restrictions were caused by the accident of December 27, 1993 . . . . The Court finds from said evidence that the plaintiff did suffer an injury to his back as a result of an accident as defined by § 48-151(2) on December 27, 1993.

It is true that factual determinations by the compensation court will not be set aside on appeal unless such determinations are clearly erroneous. *Toombs v. Driver Mgmt., Inc.*, 248 Neb. 1016, 540 N.W.2d 592 (1995); *Aken v. Nebraska Methodist Hosp.*, 245 Neb. 161, 511 N.W.2d 762 (1994); *McGowan v. Lockwood Corp.*, 245 Neb. 138, 511 N.W.2d 118 (1994). However, as in any other case, an appellate court is obligated in workers' compensation cases to make its own determinations as to questions of law. *Pettit v. State, ante* p. 666, 544 N.W.2d 855 (1996); *Hull v. Aetna Ins. Co.*, 247 Neb. 713, 529 N.W.2d 783 (1995); *McGowan, supra.*

While the evidence supports a factual finding that Cox's injury was caused by the December 27 accident in the medical sense, that does not necessarily mean that the evidence is such as to establish a sufficient nexus between the injury and work-related activity so as to prove that the work-related activity was the proximate or legal cause of the injury.

Noteworthy in this regard is the orthopedist's testimony:

Q. Doctor, if I came to you today and I said, Doctor, I went to put my suit on this morning and I put on my suit pants and I lifted up my left leg and I just felt like I got a stabbing pain in the low back, how would that history provide you with any diagnostic benefit?

A. Well, I think the history that you got the back pain would give me a clue and I guess I would evaluate you from that standpoint on. I think people can get pinched nerves in their back from a variety of things that, you know, we don't realize that they put any stress on our backs.

Q. So a variety of things could be several just everyday activities?

A. Everyday activities.

Q. Lifting your leg, crossing your leg, things of that nature?

A. That's right.

Q. Would it be significant to you if I — As we talked about this and you were trying to diagnose the cause of my pain in the low back, would it be significant to you if I said and, Doctor, you probably should know that about seven months earlier, I was experiencing low back pain and I've been treated by a chiropractor?

A. I think that would be important, yes.

Q. Why would that be important?

A. Well, that would indicate to me that he was having back problems and it's very possible that they can get worse at any time.

Q. Just from very simple daily activity; correct?

A. That's right . . . .

As Larson notes, looking at only medical causation without resort to legal causation

sometimes leads to a slighting of the need for precision in defining the legal rule, with the result that decisions may be based on statements by doctors that the exertion did or did not cause the [injury], although neither the doctors nor the lawyers may have had a clear and consistent concept of what "caused" meant in this setting.

1A Arthur Larson & Lex K. Larson, The Law of Workmen's Compensation § 38.83(a) at 7–318 to 7–319 (1995). In *Bryant v. Masters Mach. Co.*, 444 A.2d 329, 336–37 (Me. 1982), the Supreme Judicial Court of Maine provided a detailed analysis of the need for the legal causation prong of the test:

> Absent the content provided by "legal cause," the causation requirement . . . would allow compensation for any disability that could be shown as a matter of medical or physical fact to have occurred because of the effect of ordinary activity upon a pre-existing condition during the course of employment. Such was clearly not the intent of the Legislature in using the "arising out of" language. It was intended that compensation should be available only where disability results from some sufficient causal relationship to the conditions under which the employee works. . . . This legal element of the causation requirement is the mechanism by which it becomes possible to distinguish between two types of disabilities: (1) that such happens to occur at work as a result of the employee's existent condition but without any enhancement of his susceptibility to its occurrence arising out of any conditions or requirements of the work activity or environment, and (2) that disability which occurs only because some condition of his employment increases the risk that he will sustain a disability above that level of risk which, because of his condition, he faces in his normal everyday life. Only by that mechanism can we distinguish the disability that is more likely than not produced, at least in part, by a risk related to the employment from one that is not produced in any way by such a risk. Thus, to meet the test of legal cause where the employee bears with him some "personal" element of risk because of a pre-existing condition, the employment must be shown to contribute some substantial element to increase the risk, thus offsetting the personal risk which the employee brings to the employment environment.

Cox brought to his employment a personal risk by way of a prior back condition and was engaging in an everyday activity when he was injured. The risk from that activity was not

peculiar to or increased by his employment. Furthermore, the injury to Cox's back resulted from a hazard (putting on clothes) that he would have been equally exposed to apart from the employment. Therefore, the legal causation prong of the split test is not satisfied; as a result, Cox's back injury of December 27, 1993, cannot be said to have arisen out of his employment.

In short, this is not a case in which Cox's fall caused the back injury, but, rather, a case in which the preexisting back condition caused the fall.

Accordingly, I would reverse the award of the compensation court and remand the cause for dismissal.