VICKY L. LEVANDER, APPELLANT, v. THE BENEVOLENT AND
PROTECTIVE ORDER OF ELKS OF THE UNITED STATES OF AMERICA,
A NEBRASKA CORPORATION, DEFENDANT AND THIRD-PARTY
PLAINTIFF, APPELLEE, AND SUNBEAM CORPORATION, A DELAWARE
CORPORATION, ET AL., THIRD-PARTY DEFENDANTS, APPELLEES.
596 N.W. 2d 705

Filed July 16, 1999. No. S-98-419.

Robert J. Parker, Jr., of Seiler, Parker & Moncrief, P.C., for appellant.

John J. Schirger and Patrick E. Brookhouser, Jr., of McGrath, North, Mullin & Kratz, P.C., for appellee Benevolent and Protective Order of Elks.

Denzel R. Busick, of Luebs, Leininger, Smith, Busick, Johnson, Baack, Placzek & Steele, for appellee Sunbeam.

Randall L. Goyette, of Baylor, Evnen, Curtiss, Grimit & Witt, for appellee Manchester Tank & Equipment.

Terrance O. Waite and Keith A. Harvat, of Murphy, Pederson, Waite & McWha, for appellee Bosselman.

HENDRY, C.J., WRIGHT, GERRARD, McCORMACK, and MILLER-LERMAN, JJ.

WRIGHT, J.

## NATURE OF CASE

Plaintiff, Vicky L. Levander, appeals from the trial court's order granting summary judgment in favor of defendant, The Benevolent and Protective Order of Elks of the United States of America (Elks).

## SCOPE OF REVIEW

■ Summary judgment is proper only when the pleadings, depositions, admissions, stipulations, and affidavits in the record disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Woodard v. City of Lincoln*, 256 Neb. 61, 588 N.W.2d 831 (1999).

■ In reviewing a summary judgment, an appellate court views the evidence in a light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence. *Id.*

## FACTS

On June 18, 1995, at approximately 2 p.m., the outdoor barbecue grill at the Elks lodge in Hastings, Nebraska, caught fire,

and Levander was injured as a result. On that date, the lodge was holding a golf tournament, and Levander, a long-time "Doe/Elks [m]ember," was grilling hamburgers outdoors.

From September 1994 through June 18, 1995, Levander worked at the lodge on weekends, usually from 8 a.m. until noon, but occasionally, she agreed to work later than noon. Her duties included opening the lodge clubhouse, bartending, accepting green fees from golfers, and cleaning.

Levander was always paid in cash for her weekend work at the rate of $5 per hour. There were no state, federal, or FICA tax deductions made by the lodge from the money paid to Levander. She never received a W-2 statement or a 1099 tax form, and the lodge never included her wages in computations for workers' compensation coverage. The clubhouse manager, Helyn Jane Quick, exercised little control or supervision over Levander's activities.

During her 13 years as a member of the Elks, Levander performed various volunteer activities, including grilling hamburgers for golf tournaments, working during "beer and burger nights," bringing in food and cleaning up after the men's meetings at the lodge, and working with the female auxiliary of the lodge on their Christmas project and the "Exalted Ruler's" dinner.

Grilling hamburgers at the lodge's golf tournaments was a common volunteer activity for Elks members. From 1989 to June 18, 1995, no person had ever been paid to grill hamburgers at the tournaments.

On June 18, 1995, Levander opened the clubhouse, cleaned, and tended bar, but she did not take green fees because of the golf tournament. Sometime after 12:30 p.m., Levander went outside and started to grill hamburgers for the tournament. A full-time lodge employee was originally scheduled to work that day, but did not do so.

The clubhouse manager testified that Levander was not required to grill hamburgers on June 18, 1995, as a part of her employment and that Levander could have left the lodge at any time. The manager stated that if Levander had not grilled hamburgers that day, the manager would have asked another member of the lodge to grill or help with the bar because "everybody

out there helps everybody." There was no specific discussion between Levander and the manager with regard to whether Levander would be paid for grilling hamburgers. Levander stated that she did not ask to be paid for grilling hamburgers and that it was her understanding that she was volunteering and donating her time to the lodge while she was grilling.

After the accident, in August 1995, the clubhouse manager paid Levander for her work on June 18. The manager stated that she decided on her own to pay Levander $40 for a full 8 hours' work on June 18, notwithstanding the fact that Levander did not work 8 hours that day. Pay records classified Levander's payment as miscellaneous bar labor and marshaling.

Levander did not receive any workers' compensation benefits as a result of the June 18, 1995, accident, and the lodge did not file a first report of alleged occupational injury or illness with the Workers' Compensation Court until March 24, 1997.

Levander commenced this negligence action against the Elks to recover damages for injuries sustained on June 18, 1995. The Elks' answer asserted, inter alia, that it was not a proper party defendant and that the Workers' Compensation Court had exclusive jurisdiction over the matter.

The Elks subsequently commenced a third-party action against Sunbeam Corporation and Sunbeam Leisure Products Company (Sunbeam), the alleged manufacturers of the grill; Manchester Tank & Equipment Company (Manchester), the alleged manufacturer of the spare propane cylinder stored under the grill; and Bosselman, Inc., the company that allegedly filled the spare propane cylinder.

On March 25, 1998, Levander applied for leave to join Sunbeam, Manchester, Bosselman, and The Benevolent and Protective Order of the Elks, Lodge No. 159 (local Elks), as additional defendants and sought leave to amend her petition accordingly. On the same date, the trial court entered an order granting summary judgment in favor of the Elks.

On April 6, 1998, the trial court entered an order denying Levander's application to join Sunbeam, Manchester, Bosselman, and the local Elks as additional parties defendant. Levander filed her notice of appeal on April 22.

## ASSIGNMENTS OF ERROR

Levander asserts that the trial court erred in (1) granting the Elks' motion for summary judgment, because a material question of fact exists as to whether Levander was an employee and, if so, whether her injury arose out of and in the course of her employment; (2) striking portions of exhibits 4 and 5; and (3) denying Levander's application to add the local Elks as a defendant to her cause of action.

## ANALYSIS

We first consider whether the trial court erred in granting summary judgment against Levander. The Elks assert that summary judgment was proper because, as a matter of law, the Nebraska Workers' Compensation Act is Levander's exclusive remedy. Summary judgment is proper only when the pleadings, depositions, admissions, stipulations, and affidavits in the record disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Woodard v. City of Lincoln*, 256 Neb. 61, 588 N.W.2d 831 (1999).

The Nebraska Workers' Compensation Act is an employee's exclusive remedy against an employer for an injury arising out of and in the course of employment. *Schweitzer v. American Nat. Red Cross*, 256 Neb. 350, 591 N.W.2d 524 (1999). Therefore, an employee cannot normally maintain a negligence suit against his or her employer regarding an injury arising out of and in the course of employment; his or her sole remedy is a claim for workers' compensation, and all disputed workers' compensation claims " 'shall be submitted to the Nebraska Workers' Compensation Court.' " *Id.* at 356, 591 N.W.2d at 529.

A finding that one party is an employer and a finding that the other relevant party is an employee are necessary to bind the parties to the compensation schedule of the Nebraska Workers' Compensation Act. See *Kaiser v. Millard Lumber*, 255 Neb. 943, 587 N.W.2d 875 (1999). In addition, if an accident does not arise out of and in the course of employment, there is no coverage under the Nebraska Workers' Compensation Act, and the

parties are not subject to it. See *Marlow v. Maple Manor Apartments*, 193 Neb. 654, 228 N.W.2d 303 (1975).

The focus of our inquiry is, therefore, to determine whether an issue of fact exists as to the status of Levander's employment at the time she was injured. The record shows that the Elks sent interrogatories to Levander, seeking to determine where Levander was employed prior to the accident on June 18, 1995, and seeking the basis of her assertion that the claim was not barred by workers' compensation law. In response to interrogatory No. 2, "[d]escribe your employment since high school," Levander responded that she had worked at the lodge in Hastings 5 to 8 hours per week and that in the spring of 1995, the clubhouse manager and Carlie Cleveland were her supervisors.

Interrogatory No. 11 requested that if Levander contended that her claim was not barred by workers' compensation law, then she was to set forth every fact she believed supported such a contention. Levander responded that she was asked to volunteer her time in assisting with the golf tournament and that she did not receive any compensation, wages, or pay for the time she volunteered on June 18, 1995. Levander stated that she had volunteered to help with this tournament for 2 or 3 years and that on the date of the accident, she did not show up with the intention of cooking hamburgers. An employee of the Elks apparently was to have been paid to cook the hamburgers that day, but that employee did not come in to work. Levander stated that both she and her husband had been volunteers for the Elks in excess of 13 years and that they both volunteered and assisted in the weekly "beer and burger nights," where Levander assisted with making salads and setting up tables. Levander also donated her time in helping set up banquets and other golfing events.

There is evidence that on the date of the injury, Levander was grilling hamburgers after her morning shift was over and that grilling hamburgers was not part of her job with the Elks. The grilling took place on the golf course, which was outside Levander's regular place of work in the clubhouse. There was evidence that Levander's work grilling hamburgers had always been a part of her volunteer activities as a member of the Elks.

Generally, acts that are nothing more than the discharge of a person's duties as a good citizen or member of the community

are not within the course of employment. 2 Arthur Larson & Lex K. Larson, The Law of Workmen's Compensation § 27.03[4][a] (1999). However, the Elks rely on *Brown v. Leavitt Lane Farm*, 215 Neb. 522, 340 N.W.2d 4 (1983), to claim that even if Levander was acting as a volunteer, she was acting within the scope of her employment.

In *Brown*, a laborer went to the home of one of the partners of the business for which he worked and asked if there was any work for him that day. The laborer was told that there was not, but he waited at the home in order to pick up his paycheck. While waiting, he volunteered to help his coworkers with some of the work they were doing, and he was subsequently injured. We affirmed the Workers' Compensation Court's finding that the laborer was within the course of his employment. We explained that although he was a volunteer, he was in the process of assisting coworkers perform work for the employer, and the labor was done in a good-faith attempt to assist fellow employees.

*Brown* is distinguishable because (1) Levander was not physically assisting a coworker, but, apparently, filling in for someone who was not there; (2) grilling hamburgers had never been a part of the scope of Levander's employment with the Elks; and (3) there is evidence to indicate that the job Levander was doing was strictly understood to be part of her volunteer work as a member of the Elks lodge, as opposed to the assistance of coworkers.

From our review, we conclude that a material issue of fact exists whether Levander was an employee acting in the scope of employment at the time of the accident. Levander regularly volunteered her time to the Elks by grilling hamburgers and doing other activities for the lodge before and after she started being paid for certain work done at the clubhouse. The work for which Levander was paid included marshaling, cleaning, and helping at the bar, but had never included grilling hamburgers for a tournament. The evidence established that it was not unusual for members of the lodge to help with grilling at golf tournaments or on "beer and burger nights," and none of the other members were paid during these activities. For this reason, the trial court erred, and summary judgment should not have been granted.

■ We next address whether the trial court erred in striking portions of exhibits 4 and 5, the affidavits of Levander and her husband, respectively. The court granted the motion to strike those portions which contained assertions that Levander was an independent contractor, rather than an employee, of the Elks. The Elks' motion to strike was based upon *Momsen v. Nebraska Methodist Hospital*, 210 Neb. 45, 313 N.W.2d 208 (1981), wherein we explained that if a party, without reasonable explanation, changes his or her testimony concerning material facts on a vital issue, such change being made to meet the exigencies of pending litigation, the testimony is discredited as a matter of law and should be disregarded. See, also, *Converse v. Morse*, 232 Neb. 925, 442 N.W.2d 872 (1989); *Kluender v. Mattea*, 214 Neb. 327, 334 N.W.2d 416 (1983); *Kirchner v. Gast*, 169 Neb. 404, 100 N.W.2d 65 (1959). The Elks assert that Levander's prior answers to interrogatories admitted that she was an employee and that, thus, any subsequent assertions to the contrary were properly struck. In support of this assertion, the Elks point out that Levander's prior answers to interrogatories listed the Elks as one of several past "employers," and Levander did not specifically assert that she was an independent contractor.

■ The important considerations in discrediting testimony as a matter of law are that the testimony pertains to a vital point, that it is clearly apparent the party made the change to meet the exigencies of the pending case, and that there is no rational or sufficient explanation for the change in testimony. *Momsen v. Nebraska Methodist Hospital, supra*. Where a party's testimony was not changed to meet the exigencies of the case, in that the change is satisfactorily explained, or the changed version at trial is corroborated by other evidence in the record providing an adequate basis for the jury's findings, a question of credibility for the jury is presented. *Converse v. Morse, supra*. We conclude that the evidence is insufficient to support a finding that Levander clearly changed her testimony in order to meet the exigencies of the pending litigation. Thus, the district court also erred in granting the Elks' motion to strike.

■ Lastly, we address the assignment of error that the trial court erred in denying Levander's application to add the local Elks lodge as a defendant. The propriety of adding a new

defendant depends in part upon whether the cause of action otherwise remains the same. See *New Light Co. v. Wells Fargo Alarm Servs.*, 252 Neb. 958, 567 N.W.2d 777 (1997). In determining whether a new cause of action results from adding a new defendant, the test is whether an attempt is made to state facts giving rise to a wholly distinct and different legal obligation against the defendant, or to change the liability sought to be enforced. See *id.* By amending her pleading so as to add the local Elks as an additional party defendant, Levander's cause of action otherwise remains unchanged. Since we have reversed the judgment and remanded the cause for further proceedings, we believe it would be an abuse of discretion to deny Levander's application to add the local Elks as a defendant.

## CONCLUSION
The judgment of the district court is reversed, and the cause is remanded for further proceedings.

REVERSED AND REMANDED FOR
FURTHER PROCEEDINGS.

CONNOLLY and STEPHAN, JJ., not participating.