C. PATRICIA SKINNER, APPELLEE, V. OGALLALA
PUBLIC SCHOOL DISTRICT NO. 1, APPELLANT.
631 N.W.2d 510

Filed August 10, 2001.   No. S-99-1287.

Terrance O. Waite and Keith A. Harvat, of Murphy, Pederson, Waite & McWha, for appellant.

James J. Paloucek, of Norman, Paloucek & Herman Law Offices, for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

PER CURIAM.

## I. NATURE OF CASE

This is a negligence action brought under the Political Subdivisions Tort Claims Act, Neb. Rev. Stat. § 13-901 et seq. (Reissue 1991 & Cum. Supp. 1994). Appellee, C. Patricia Skinner, sued appellant, Ogallala Public School District No. 1 (District), for injuries she suffered when she fell through a trapdoor in the floor that had been left open at the school. Both parties filed motions for summary judgment on the workers' compensation issue, and the trial court granted summary judgment in favor of Skinner on the issue of whether the Nebraska Workers' Compensation Act applies. After trial on the merits, the trial court entered a judgment for Skinner in the amount of $194,910.50. The District appeals on various grounds.

## II. BACKGROUND

Skinner has been teaching special education at the school since 1983 and has served as the special education coordinator since 1987, a position she held at the time of the hearing. During the summer of 1996, the District had undertaken a project to

string computer cable throughout the school. Occasionally, this meant opening various trapdoors around the school that led to tunnels underneath the building.

Sometime between 7:30 and 8 p.m. on July 16, 1996, Skinner and her husband, who is the band director at the school, went to the school to return some computer equipment he had borrowed that belonged in the band room office. Skinner's husband opened the band room door, and Skinner walked inside carrying a printer and some envelopes. There were no lights on in the room.

Skinner proceeded to the middle of the band room where she turned on the bank of lights that lighted the middle part of the main band room. She then walked to her husband's office in the opposite corner of the band room.

When Skinner entered the office, she set the box of envelopes down on her husband's desk. She then took one step toward the cabinet where the printer usually sits, holding the printer under her left arm. On her second step, however, she fell down through an open trapdoor into a 4-foot-deep tunnel below. She landed feet first and then fell backward. Skinner was stunned at first and did not realize she was hurt until she tried to get up and out of the hole. Her knee was bent, and she could not straighten her leg. The trapdoor apparently had been left open in order to dry out the tunnel below as part of the project to string computer cable throughout the building.

On prior occasions when Skinner had been in her husband's office, a shelved cart had been placed over the trapdoor. On this occasion, however, the lid to the trapdoor was leaning against the wall. Skinner and her husband testified that no warnings had been posted by the opening in the floor, although Skinner said she was aware at the time that a cabling crew was stringing cable during that summer.

As a result of the fall, Skinner broke her leg and required extensive medical treatment. Skinner worked from home through the month of August 1996. During that time, she was able to hold meetings in her house. She missed 1 day of inservice meetings and partial days for physical therapy and doctors' appointments. Skinner started physical therapy soon after the injury and continued her therapy until April 1997. She said she experienced severe pain as a result of the injury and took pain medication daily.

## III. ASSIGNMENTS OF ERROR

The District assigns, restated, the following errors:

(1) The trial court erred in granting Skinner's motion for summary judgment and in denying the District's motion for summary judgment regarding the applicability of the Nebraska Workers' Compensation Act.

(2) The trial court erred in determining that Skinner was a business invitee as opposed to a licensee.

(3) The trial court erred in determining that Skinner was not contributorily negligent in proceeding into the office without turning on the office light and erred in failing to reduce her recovery in proportion to her negligence.

(4) The trial court erred in its determination that the alleged negligence of the District was a proximate cause of the injuries to Skinner.

(5) The trial court erred in its determination of damages.

(6) The trial court's ruling is not supported by the evidence.

(7) The trial court's decision is contrary to law.

(8) The trial court erred in denying the District's motion for directed verdict and its motion for new trial and/or motion to set aside the verdict/judgment notwithstanding the verdict.

(9) The trial court erred in denying the District's motion to compel.

## IV. STANDARD OF REVIEW

In reviewing a summary judgment, an appellate court views the evidence in a light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence. *City State Bank v. Holstine*, 260 Neb. 578, 618 N.W.2d 704 (2000). Summary judgment is proper only when the pleadings, depositions, admissions, stipulations, and affidavits in the record disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Id.*

When adverse parties have each moved for summary judgment and the trial court has sustained one of the motions, the reviewing court obtains jurisdiction over both motions and may determine the controversy which is the subject of those motions or make an order specifying the facts which appear without

substantial controversy and direct such further proceedings as the court deems just. *Doe v. Zedek*, 255 Neb. 963, 587 N.W.2d 885 (1999). After trial, the merits should be judged in relation to the fully developed record, not whether a different judgment may have been warranted on the record at summary judgment. *Id.*

■ Where there is no factual dispute, the question of whether the injury arose out of and in the course of employment is clearly one of law, in connection with which a reviewing court has an obligation to reach its own conclusions independent of those reached by the inferior courts. *Johnson v. Holdrege Med. Clinic*, 249 Neb. 77, 541 N.W.2d 399 (1996).

■ In regard to the trial court's judgment upon trial, the determination as to whether a plaintiff is an invitee or licensee is a question of fact. *McIntosh v. Omaha Public Schools*, 249 Neb. 529, 544 N.W.2d 502 (1996). Likewise, the question of whether contributory negligence is present in a particular case is a question for the trier of fact. *Moore v. State*, 245 Neb. 735, 515 N.W.2d 423 (1994).

> In actions brought pursuant to the Political Subdivisions Tort Claims Act, the findings of the trial court will not be disturbed on appeal unless they are clearly wrong, and when determining the sufficiency of the evidence to sustain the judgment, it must be considered in the light most favorable to the successful party. . . . Every controverted fact must be resolved in favor of such party, and it is entitled to the benefit of every inference that can reasonably be deduced from the evidence.

(Citation omitted.) *McIntosh*, 249 Neb. at 531, 544 N.W.2d at 504-05.

## V. ANALYSIS

### 1. SUMMARY JUDGMENT ON WORKERS' COMPENSATION ISSUE

The District first assigns as error the trial court's grant of partial summary judgment for Skinner on the issue of whether the Nebraska Workers' Compensation Act applied.

### (a) Employer Release

■ The District first argues that Skinner's exclusive remedy against the District is under the Nebraska Workers' Compensation Act and that under the act, the District has been

released from all claims arising from Skinner's injury. For this argument, the District cites Neb. Rev. Stat. § 48-148 (Reissue 1998), which states:

> If any employee . . . of any employer subject to the Nebraska Workers' Compensation Act files any claim with, or accepts any payment from such employer, or from any insurance company carrying such risk, on account of personal injury, or makes any agreement, or submits any question to the Nebraska Workers' Compensation Court under such act, such action shall constitute a release to such employer of all claims or demands at law, if any, arising from such injury.

The District argues that because Skinner submitted an "Employee's Report" to the District's insurance company and because she received and cashed four out of five workers' compensation checks from the insurer, the District is released under § 48-148 and that Skinner therefore cannot proceed in tort against the District.

▮▮▮▮▮ Indeed, the Nebraska Workers' Compensation Act is an employee's exclusive remedy against an employer for an injury arising out of and in the course of employment. *Levander v. Benevolent and Protective Order of Elks*, 257 Neb. 283, 596 N.W.2d 705 (1999). An employee cannot normally maintain a negligence suit against his or her employer regarding an injury arising out of and in the course of employment; his or her sole remedy is a claim for workers' compensation. *Id.* However, the District's argument begs the question whether the act applies at all. The language in § 48-148, in specifying an employee who is "subject to the Nebraska Workers' Compensation Act files any claim," means that the statute covers only claims arising out of and in the course of employment, i.e., claims to which the Nebraska Workers' Compensation Act applies. See *Marlow v. Maple Manor Apartments*, 193 Neb. 654, 228 N.W.2d 303 (1975) (construing similar language contained in predecessor to § 48-148 to cover only claims to which act applies). Thus, before we can determine that the District is released under § 48-148, we must determine whether the act applies.

We note that the trial court stated in its order on summary judgment that the workers' compensation payments made to

Skinner in the weeks following the injury could be set off against the judgment for damages in the negligence case. The payments were not made by the District; rather, they were made by the District's workers' compensation insurer. While the insurer may have a subrogation claim to recover the payments from Skinner, the payments may not be set off against the judgment in the negligence action.

(b) Applicability of Nebraska Workers' Compensation Act

The District argues that the Nebraska Workers' Compensation Act applies to Skinner's injuries because the injury arose out of and in the course of her employment. The trial court found that there was no dispute in the evidence that Skinner was acting "in the status of the wife of Rockney D. Skinner and not as an employee of the [District]." The trial court found that as a result, the injury did not arise out of or in the course of her employment.

Under Neb. Rev. Stat. § 48-101 (Reissue 1998):

When personal injury is caused to an employee by accident or occupational disease, arising out of and in the course of his or her employment, such employee shall receive compensation therefor from his or her employer if the employee was not willfully negligent at the time of receiving such injury.

The two phrases "arising out of" and "in the course of" in § 48-101 are conjunctive; thus, both must be established by a preponderance of the evidence. *Logsdon v. ISCO Co.*, 260 Neb. 624, 618 N.W.2d 667 (2000). The phrase "arising out of" as used in § 48-101, describes the accident and its origin, cause, and character, i.e., whether it resulted from the risks arising within the scope of the employee's job; the phrase "in the course of" refers to the time, place, and circumstances surrounding the accident. *Id.*

The "in the course of" requirement has been defined as testing the work connection as to time, place, and activity; that is, it demands that the injury be shown to have arisen within the time and space boundaries of the employment, and in the course of an activity whose purpose is related to the employment. *Cox v. Fagen Inc.*, 249 Neb. 677, 545 N.W.2d 80 (1996). See 1 Arthur Larson & Lex K. Larson, Larson's Workers' Compensation Law

§ 12.01 (2001). The general rule is: "An injury is said to arise in the course of the employment when it takes place within the period of the employment, at a place where the employee reasonably may be, and while the employee is fulfilling work duties or engaged in doing something incidental thereto." *Id.*, § 12.00 at 12-1. "A compensable injury must arise not only within the time and space limits of the employment, but also in the course of an activity related to the employment." 2 Larson & Larson, *supra*, § 20.00 at 20-1. We need only consider whether Skinner was engaged in an employment-related activity at the time of the injury, because our determination in that regard is dispositive of the issue concerning the applicability of the act.

"An activity is related to the employment if it carries out the employer's purposes or advances its interests directly or indirectly." *Id.* at 20-1. "[W]ork-connected activity goes beyond the direct services performed for the employer and includes at least some ministration to the personal comfort and human wants of the employee." *Id.*, § 20.01 at 20-2. The difficulty is in drawing the line. *Id.*

In the specific context regarding acts that benefit coworkers, Larson states, "An act outside an employee's regular duties which is undertaken in good faith to advance the employer's interests, whether or not the employee's own assigned work is thereby furthered, is within the course of employment." *Id.*, § 27.00 at 27-1. The reason for the rule is that it would be contrary to human nature as well as the employer's interest to forbid employees from helping each other at pain of losing benefits should an injury occur. *Id.*, § 27.01[2]. By contrast, if the employee's activity aids a coemployee in a matter entirely personal to the coemployee, then it is outside the course of employment, unless the deviation is insubstantial. *Id.*, § 27.01[5].

The question is most difficult where the employee helps a coemployee and simultaneously advances the employer's work, but does so *not* primarily to help the employer, but to accommodate the coemployee. *Id.*, § 27.01[5]. The case at bar can be characterized as such a case.

In resolving the question we are guided by our prior cases, particularly *Brown v. Leavitt Lane Farm*, 215 Neb. 522, 340 N.W.2d 4 (1983), and *Levander v. Benevolent and Protective*

*Order of Elks*, 257 Neb. 283, 596 N.W.2d 705 (1999). In *Brown v. Leavitt Lane Farm, supra,* the claimant was employed as a farmworker. On the day of the accident, the claimant went to the residence of one of the partners in the business to see if there was any work. *Id.* He was told there was no work, so he asked if he could get his paycheck. *Id.* He then told the partner that he was going over to help some of his coworkers while the check was being drawn. *Id.* He tried to assist his coworkers in digging some postholes for a corral, but was injured almost immediately when his arm got caught in the auger of a posthole digger. *Id.* Because the case was on appeal from a Workers' Compensation Court determination in favor of the claimant, we resolved the dispute in the evidence regarding the employer's authorization of the claimant's actions in favor of the claimant. *Id.* We declared:

> We affirm the finding of the Workmen's Compensation Court that appellee was within the course of his employment because, although he was a volunteer, he was in the process of helping coemployees perform work for appellant, and the labor done by plaintiff in his good faith attempt to assist fellow employees was being done with the authorization of appellant.

*Id.* at 524, 340 N.W.2d at 6-7.

In *Levander v. Benevolent and Protective Order of Elks, supra,* the plaintiff was employed at the Elks lodge, and her duties included opening the clubhouse, bartending, accepting green fees from golfers, and cleaning. *Id.* She, as a member of the lodge, also performed various volunteer activities for the lodge, as did other members, including grilling hamburgers for golf tournaments (a common volunteer activity for lodge members), working during " 'beer and burger nights,' " and cleaning up after the men's meetings. *Id.* at 285, 596 N.W.2d at 708. Neither she nor anyone else had been paid to grill hamburgers at the lodge's tournaments. *Id.* On the day of the accident, the plaintiff opened the clubhouse and tended bar. *Id.* Sometime after 12:30 p.m., the plaintiff went outside and started grilling hamburgers for a tournament, filling in for another lodge employee who did not come to work that day. *Id.* The grill somehow caught fire, and she was injured. *Id.* The plaintiff did not receive any workers' compensation benefits as a result of the accident. *Id.*

We noted that the plaintiff was grilling hamburgers after her shift was over; the grilling was not part of her duties as an employee; the grilling took place on the golf course, outside her regular place of work in the clubhouse; and the grilling of hamburgers had always been a part of her volunteer activities. *Id.* We distinguished *Brown v. Leavitt Lane Farm, supra,* because of three facts:

> (1) Levander was not physically assisting a coworker, but, apparently, filling in for someone who was not there; (2) grilling hamburgers had never been a part of the scope of Levander's employment with the Elks; and (3) there is evidence to indicate that the job Levander was doing was strictly understood to be part of her volunteer work as a member of the Elks lodge, as opposed to the assistance of coworkers.

*Levander v. Benevolent and Protective Order of Elks,* 257 Neb. 283, 289, 596 N.W.2d 705, 710 (1999). We concluded that there existed an issue of fact as to whether the plaintiff "was an employee acting in the scope of employment." *Id.*

The facts we used in *Levander* to distinguish *Brown v. Leavitt Lane Farm,* 215 Neb. 522, 340 N.W.2d 4 (1983), show that our paramount consideration was that the plaintiff in *Levander* was not acting in her capacity as an employee, but, rather, as a member of the lodge volunteering her time and efforts. In other words, the plaintiff's activity in *Levander* was related to her membership at the lodge, not her employment. In contrast, the claimant in *Brown* was acting in his capacity as an employee, despite the fact that he was not on the clock at the time of the injury, because he had no other involvement with the company or its employees.

In the case at bar, Skinner's duties concern only special education and have nothing to do with the band program. She does, however, as a part of her employment, assist coworkers in doing other tasks on occasion. Despite this fact, her assistance of coworkers has historically been confined to helping them during regular working hours during the school year. The injury in question occurred late in the evening in the middle of the summer when school was not in session. Skinner testified that she would not have made such a special trip to the school to assist a

coworker but for the fact that the coworker was her husband. Helping her husband in such circumstances would not be considered a part of her employment because giving help in those circumstances was not the general custom of Skinner or the employees at the school. The instant case is therefore more analogous to *Levander* and is distinguishable from *Brown*. In *Levander*, we stated, "acts that are nothing more than the discharge of a person's duties as a good citizen or member of the community are not within the course of employment." 257 Neb. at 288-89, 596 N.W.2d at 710. In the instant case, Skinner was assisting her husband for a purely personal reason, namely, that she wanted to expedite their departure for a vacation, so the injuries she sustained while giving such assistance did not arise in the course of employment.

As stated above, the phrases "arising out of" and "in the course of" in § 48-101 are not synonymous and must both be established in order for the Nebraska Workers' Compensation Act to apply. See *Logsdon v. ISCO Co.*, 260 Neb. 624, 618 N.W.2d 667 (2000). Because we have concluded that the injury in this case did not arise "in the course of" employment, we need not address whether the injury arose out of employment.

## 2. SKINNER'S STATUS

Given our determination that the Nebraska Workers' Compensation Act does not apply to the instant case, it becomes necessary to determine the duty the District owed to Skinner. We begin our analysis by noting that the accident in this case occurred before *Heins v. Webster County*, 250 Neb. 750, 552 N.W.2d 51 (1996), which abrogated the distinction between invitees and licensees. Because *Heins* was prospective in effect, it is necessary to determine whether Skinner was an invitee or a licensee at the time of the accident in question.

The law places those who come upon the premises of another in three classes: Invitees are those who are expressly or impliedly invited, as a customer to a store; licensees are persons whose presence is not invited, but tolerated; trespassers are persons who are neither suffered nor invited to enter. *Lindelow v. Peter Kiewit Sons', Inc.*, 174 Neb. 1, 115 N.W.2d 776 (1962). This case deals with the distinction between the former two

classes. The District argues that the trial court was clearly wrong in finding that Skinner was an invitee and that, instead, she should have been considered a licensee.

A licensee is a person who is privileged to enter or remain upon the premises of another by virtue of the possessor's express or implied consent, but who is not a business visitor. See, *Derr v. Columbus Convention Ctr.*, 258 Neb. 537, 604 N.W.2d 414 (2000); *McIntosh v. Omaha Public Schools*, 249 Neb. 529, 544 N.W.2d 502 (1996). A licensee is on the premises of another for the licensee's own interest or gratification. Such person is exercising the privilege solely for that person's own convenience or benefit and does not stand in any contractual relation with the owner or occupant of the premises. *Palmtag v. Gartner Constr. Co.*, 245 Neb. 405, 513 N.W.2d 495 (1994).

An invitee, on the other hand, is a person who goes on the premises of another in answer to the express or implied invitation of the owner or occupant on the business of the owner or occupant or for their mutual advantage. See *Derr v. Columbus Convention Ctr., supra.* This court has used the "economic benefit" test for determining an entrant's status, whereby a business visitor or invitee is defined as one who is expressly or impliedly invited or permitted to enter or remain on the premises in the possession of another for a purpose directly or indirectly connected with the business of the possessor or with business dealings between them. *Palmtag v. Gartner Constr. Co., supra.* See, also, Restatement (Second) of Torts § 332(3) (1965). If the invitation relates to the business of the one who gives it, or is given for the mutual advantage of a business nature for both parties, the party receiving the invitation is an invitee. See *Palmtag v. Gartner Constr. Co., supra.* See, also, *McIntosh v. Omaha Public Schools, supra.*

The economic benefit theory proceeds on the assumption that affirmative obligations are imposed on people only in return for some consideration or benefit. Any obligation to discover latent dangerous conditions of the premises is regarded as an affirmative one, and the consideration for imposing it is sought in the economic advantage—actual or potential—of the plaintiff's visit to the occupier's own interest. 5 Fowler V. Harper et al., The Law of Torts § 27.12 (2d ed. 1986).

An invitation to a business visitor need not be express, as an invitation is *inferred* where there is a common interest or mutual advantage. See, *Palmtag v. Gartner Constr. Co., supra*; *Lindelow v. Peter Kiewit Sons', Inc.*, 174 Neb. 1, 115 N.W.2d 776 (1962). An "invitation," as a layperson might use the term in ordinary affairs of life, is not required for one to be an invitee as the term is used in law. See *Lindelow v. Peter Kiewit Sons', Inc., supra.*

The District emphasizes that Skinner's subjective intent or purpose in visiting the school was to help her husband return the computer equipment so they both could leave town for a vacation the next day. The proper inquiry, however, is not whether Skinner intended for her visit to benefit the possessor of the premises, but simply whether the visit inures to their mutual advantage. See Restatement, *supra*, comment *e*. Business visitors include those who come onto the land for a purpose connected with their own business, so long as that purpose is connected with any purpose, business or otherwise, for which the possessor uses the land. *Id.* In fact, it is not necessary that the visitor shall be upon the land for the purposes of the possessor's business at all, if the visit is for the convenience or arises out of the necessities of others who are themselves upon the land for such a purpose. See *id.*, comment *g*.

These principles are illustrated in decisions made by appellate courts in other jurisdictions. For instance, in *Poulin v. Colby College*, 402 A.2d 846 (Me. 1979), the plaintiff was assisting an employee of a college into the dormitory where the employee worked, when the plaintiff slipped and fell on an icy road. The defendant college argued that the plaintiff was not a business invitee, because he was gratuitously aiding the employee and was not on the campus for any business purpose of his own. The Supreme Judicial Court of Maine, however, affirmed the trial court's determination that the plaintiff was an invitee. *Id.* The court stated that "[b]y his conduct, plaintiff enabled one of defendant's employees to reach her place of employment, thereby conferring, at least to some degree, an economic benefit upon defendant. An invitation for plaintiff to enter upon defendant's premises is reasonably implied from such circumstances." *Id.* at 849.

Similarly, in *Harter v. Ozark-Kenworth, Inc.*, 904 S.W.2d 317 (Mo. App. 1995), the plaintiff was injured while helping his father, an employee of a truck manufacturer, in unloading truck cabs that were being delivered for purchase and resale by the father's employer. The Missouri Court of Appeals stated:

> While there was evidence in the record that [the plaintiff's] participation in the delivery of truck cabs was solely for his own purposes, insofar as he was motivated by his desire to be helpful to a parent who was supporting him, there was also evidence in the record that his presence at the [employer's premises] was of benefit to [the employer], since he was assisting in the delivery and undecking of truck cabs, which was a prerequisite to their resale by [the employer]. Viewing the evidence in the light most favorable to [the plaintiff], there was sufficient evidence in the record from which a jury could find that [the plaintiff's] presence on the premises was "connected with the business dealings of the owner" in a way that was "for the mutual benefit of himself and the owner" and that [the plaintiff] was thus a business invitee . . . .

*Id.* at 321 n.1. See, also, e.g., *Dorton v. Francisco*, 309 Ark. 472, 833 S.W.2d 362 (1992) (sufficient evidence for jury to find plaintiff was invitee where plaintiff was, for his own purposes, helping friend perform friend's duties as farmhand); *Newton v. Pennsylvania Iron & Coal, Inc.*, 85 Ohio App. 3d 353, 619 N.E.2d 1081 (1993) (evidence supported finding that wife was invitee when injured while picking up husband's paycheck); *Mullins et al. v. Easton et al.*, 176 Ind. App. 590, 376 N.E.2d 1178 (1978) (voluntary helper of repairman was business invitee when injured carrying "roto rooter" machine into defendant's residence).

In other words, in order to determine if a business invitation is implied, the inquiry is not a subjective assessment of why the visitor chose to visit the premises in a particular instance. Indeed, such a standard would make analysis of status distinctions even more logically convoluted than it already is. Instead, the initial question is simply whether the visit is objectively related to the business of the possessor of the premises, such that the visit is to the mutual advantage of the possessor and the plaintiff, and an invitation to the plaintiff is implied.

Thus, in the instant case, it does not matter whether the evidence shows that the District expressly invited Skinner to visit, because an invitation is implied so long as the visit was to the mutual advantage of Skinner and the District. Similarly, Skinner's intent in visiting is irrelevant, because the advantage of the visit to her need not be the same as the advantage to the District.

The record in this case supports the trial court's finding that Skinner's visit to the school was to the mutual advantage of Skinner and the District. Both Skinner and her husband testified that the purpose of their visit to the school was to return a computer, printer, and supplies that Skinner's husband had taken to a band director's meeting. Skinner's husband specifically testified that returning the property was a part of his duties as an educator. While Skinner agreed that she was assisting her husband for her own convenience and that she had not been asked by the District to assist, both Skinner and her husband testified that Skinner's assistance in returning school property was in furtherance of the interests of the District. Furthermore, the superintendent of the school testified that a teacher in the school building over the summer, helping a coemployee return school property, would be furthering the educational process.

In short, the record contains substantial evidence to support the trial court's finding that Skinner's visit to the school was to the mutual advantage of Skinner and the District and, thus, that a business invitation was implied. Skinner was not within the scope of her own employment for workers' compensation purposes, as she was assisting her husband with his job rather than performing her own duties, but this assistance was nonetheless of mutual advantage to Skinner and the District, and this advantage implies an invitation under the economic benefit test. Giving Skinner all reasonable inferences from the evidence, as required by our standard of review, we cannot say that the trial court was clearly wrong in finding that Skinner had the status of an invitee when injured.

### 3. CONTRIBUTORY NEGLIGENCE

The District next argues that Skinner failed to exercise ordinary care and was thus contributorily negligent. The District

asserts that if the office was too dimly lit to see the hole, Skinner should have turned on the lights, but if the office was not too dimly lit, she should have seen the hole. Skinner argues that she acted as a reasonable person would have on the night of the accident; thus, she was not contributorily negligent.

> "Contributory negligence is conduct on the part of the plaintiff amounting to a breach of the duty which the law imposes upon persons to protect themselves from injury and which, concurring and cooperating with actionable negligence on the part of the defendant, contributes to the injury complained of as a proximate cause."

*Grote v. Meyers Land & Cattle Co.*, 240 Neb. 959, 969, 485 N.W.2d 748, 757 (1992).

Skinner testified that the light in the band room offered enough illumination for her to accomplish her task but not enough to light up a black hole on a floor with dark carpeting. We must keep in mind that in actions brought pursuant to the Political Subdivisions Tort Claims Act, the findings of the trial court will not be disturbed on appeal unless they are clearly wrong. *Desel v. City of Wood River*, 259 Neb. 1040, 614 N.W.2d 313 (2000). While the trial court could have reasonably concluded that Skinner was contributorily negligent, the trial court was not clearly erroneous in making the opposite conclusion. It appears from the evidence that reasonable minds could differ as to whether Skinner was contributorily negligent. Thus, the ruling of the trial court will be upheld as to this question.

### 4. PROXIMATE CAUSE

The District next assigns as error the trial court's determination that the alleged negligence of the District was a proximate cause of the injuries to Skinner. The District assigned this error but did not argue this in its brief. Errors assigned but not argued will not be addressed on appeal. *Bowers v. Dougherty*, 260 Neb. 74, 615 N.W.2d 449 (2000).

### 5. EXCESSIVE DAMAGES

Because we conclude that the trial court was not clearly wrong in finding Skinner to be an invitee, we therefore reach the District's next assignment of error, namely, that the damages awarded were excessive. In a negligence action brought under

the Political Subdivisions Tort Claims Act, a court's award of damages will not be set aside on appeal unless it is so clearly exorbitant as to indicate that it was the result of passion, prejudice, or mistake, or it is clear that the trier of fact disregarded the evidence or rules of law. See *Norman v. Ogallala Pub. Sch. Dist.*, 259 Neb. 184, 609 N.W.2d 338 (2000).

Skinner testified that after her initial injury, she suffered great pain. Her injury required surgery to place on her leg a fixator, which she wore for almost 3 months. Skinner testified that the fixator was uncomfortable and that if the pins were ever bumped, she would feel severe pain. After the fixator was removed, Skinner continued to experience aching, pain, stiffness, and swelling in her leg.

Following the injury, Skinner used a wheelchair for about 3 months at home and for a longer period at work. She could not get in and out of the wheelchair without assistance for 3 to 4 weeks after the accident. After December 1996, she began using either the walker or a cane. Skinner was not able to drive a car until May 1997 because of problems associated with injuries to the muscles and tendons in her leg.

Skinner testified at trial that her leg continues to tire easily and becomes stiff occasionally. Her ankle swells and gets stiff when she puts weight on it for extended periods or when the weather is cold and windy. She has difficulty walking across the yard or maneuvering across ice and snow, and she can only walk about one block without getting stiff. Skinner further testified that as a result of the injury, she can no longer enjoy the activities in which she participated before the accident, including camping, hiking, visiting the mountains, gardening, remodeling, and redecorating. At the time of trial, Skinner was still taking over-the-counter analgesics each day to quell her daily pain. She testified that once a week, she suffers what she calls excruciating pain.

In connection with the loss of consortium claim, Skinner said she was unable to be physically intimate with her husband for the entire 3 months during which she had the fixator on her leg.

Skinner testified that as a result of the injury, she incurred medical expenses of $34,784.50. Further, she underwent extensive physical therapy, and her permanent physical impairment has been estimated at 14 percent of the use of her right leg. The

trial court awarded Skinner her medical expenses, plus $150,000 for pain and suffering and permanent disability, and $10,000 for the loss of consortium claim assigned to her by her husband.

We conclude that the record contains substantial evidence regarding the pain and suffering caused by Skinner's accident as well as the persistent limitations on her activities resulting from her injuries. Therefore, given our standard of review on this issue and the record we have before us, we conclude that the District's assignment of error regarding damages is without merit.

## 6. MOTION TO COMPEL

The District assigns as error the trial court's denial of its motion to compel. After the trial court decided on summary judgment that the Nebraska Workers' Compensation Act does not apply to this case, the District filed a motion to compel, the object of which was to compel Skinner to answer requests for admissions, interrogatories, and requests for production concerning the workers' compensation issue. The District argues that the trial court should have granted its motion and allowed discovery of matters related to the workers' compensation issue. In light of our holding regarding the applicability of the Nebraska Workers' Compensation Act, it is not necessary to address this assignment of error.

## VI. CONCLUSION

We conclude that Skinner's injuries did not arise in the course of her employment by the District, and therefore, the provisions of the Nebraska Workers' Compensation Act do not bar her from bringing this tort action against the District. We further conclude that the trial court properly found Skinner to be an invitee. The remaining assignments of error by the District are without merit.

AFFIRMED.

STEPHAN, J., concurring.

I am in full agreement with the majority opinion, but I write separately to address the issue raised by the dissent. While it may seem incongruous to hold that Skinner, an employee of the District, is not subject to the Nebraska Workers' Compensation Act even though her presence on school property at the time of her injury was at least in part for the benefit of the school, thus giving her the status of an invitee, I am satisfied that this is a

correct application of established legal principles to the unique facts of this case.

Under the Nebraska Workers' Compensation Act, a compensable injury is one "arising out of and in the course of" employment. Neb. Rev. Stat. § 48-101 (Reissue 1998); *Torres v. Aulick Leasing*, 258 Neb. 859, 606 N.W.2d 98 (2000). The two phrases "arising out of" and "in the course of" in § 48-101 are conjunctive; in order to recover, a claimant must establish by a preponderance of the evidence that both conditions exist. *Logsdon v. ISCO Co.*, 260 Neb. 624, 618 N.W.2d 667 (2000); *Cox v. Fagen Inc.*, 249 Neb. 677, 545 N.W.2d 80 (1996). The "arising out of" employment requirement is primarily concerned with causation of an injury. *Id.* The "in the course of" requirement, the requirement at issue in this case, tests the " 'work connection as to time, place, and activity; that is, it demands that the injury be shown to have arisen within the time and space boundaries of the employment, *and* in the course of an activity whose purpose is related to the employment.' " (Emphasis supplied.) *Id.* at 682, 545 N.W.2d at 85, quoting *Moore v. The Sisk Co.*, 216 Neb. 451, 343 N.W.2d 767 (1984). As the dissent notes, an injury is said to arise in the course of the employment when it takes place within the period of the employment, at a place where the employee reasonably may be, and while the employee is fulfilling work duties or engaged in doing something incidental thereto. 1 Arthur Larson & Lex K. Larson, Larson's Workers' Compensation Law § 12.00 (2001).

At the time of her injury, Skinner was assisting another school employee, her husband, with an activity directly related to his job duties. As the majority notes, her activities were therefore of some benefit to the District, and the trial court's finding that she occupied the status of an invitee is not clearly erroneous. The dissent argues, however, that this invitee status precludes Skinner from falling outside the provisions of the Nebraska Workers' Compensation Act. Specifically, the dissent contends that Skinner's actions occurred in the course of her employment because teachers routinely help other teachers and the activity Skinner was assisting was not a matter entirely personal to her husband.

I agree that the return of the band property was not a matter personal to Skinner's husband. It is precisely because she was

assisting him in the performance of a task related to his job duties that her actions were of benefit to the District so as to confer upon her the status of an invitee. However, the fact that Skinner's actions benefited the District does not automatically lead to the conclusion that her injury occurred "in the course of" her employment. When asked in her deposition about her practice of assisting other teachers, Skinner testified as follows:

Q Okay. Teachers are usually fairly close-knit and help one another on a regular basis; is that right?

A I don't think I could answer that.

Q Well, the teachers you know?

A Not all of them.

Q How about you? Do you feel that you go out of your way to help other teachers?

A Yes, I do.

Q Okay. And that's what you were doing on July 16, 1996?

A I was helping my husband.

Q Okay. Who was a teacher — a fellow teacher?

A Who taught at the high school building, yes.

Q Okay. You would help him the same way you would have helped any other teacher; is that correct?

A Not at that time of day on July 16th, no.

Q You've never turned down another teacher during your 30 years, though, have you?

A Not if I was at the building prior to. I wouldn't go there specifically to help them do that.

The evidence in this case thus establishes that it was not incidental to Skinner's employment to assist other teachers at times when Skinner was not present at the school building in conjunction with her own duties. Furthermore, the record establishes that Skinner came to the school building on the evening of her injury solely for the personal reason of expediting preparations for a family vacation. Thus, although I recognize that the job duties of teachers do not fit neatly within precise boundaries, the evidence in this case clearly demonstrates that Skinner's actions in assisting her husband were not incidental to her employment and were so removed from the time and space boundaries of that employment so as to not occur "in the course of" her employment. Compare *Cox v.*

*Fagen Inc.*, 249 Neb. 677, 545 N.W.2d 80 (1996) (determining employee's injury sustained while putting on coveralls *during work hours* occurred in course of employment).

In summary, because Skinner's activities in the school building immediately prior to her injury were of some benefit to the District as the owner of the premises, she occupied the status of an invitee under the law then in effect. However, because the evidence presented reveals that Skinner's injury occurred at a time when she was acting in a purely personal capacity, the injury did not occur "in the course of" her employment.

WRIGHT, J., dissenting.

C. Patricia Skinner sued Ogallala Public School District No. 1 (District) for injuries sustained when she fell through an open trapdoor into a 4-foot-deep tunnel. The accident occurred between 7:30 and 8 p.m. on July 16, 1996, when Skinner, a teacher for the District, was helping her husband, the District's band director, return some equipment her husband had borrowed.

The trial court found as a matter of law that Skinner's injury did not occur in the course and scope of her employment. This court has affirmed the judgment of the trial court. I respectfully dissent.

An injury is said to arise in the course of the employment when it takes place within the period of the employment, at a place where the employee reasonably may be, and while the employee is fulfilling work duties or engaged in doing something incidental thereto. 1 Arthur Larson & Lex K. Larson, Larson's Workers' Compensation Law § 12.00 (2001). Skinner was at the school for the purpose of helping her husband, who was there on school business. Skinner, by helping her husband, was doing something incidental to her employment, as teachers routinely help other teachers.

An activity is related to the employment if it carries out the employer's purposes or advances its interests directly or indirectly. 2 Larson & Larson, *supra*, § 20.00. An act outside an employee's regular duties which is undertaken in good faith to advance the employer's interests, whether or not the employee's own assigned work is thereby furthered, is within the course of employment. *Id.*, § 27.00.

If an employee's activity aids a coemployee in a matter entirely personal to the coemployee, then it is outside the course of employment, unless the deviation is insubstantial. See *id.*, § 27.01[5]. The activity undertaken by Skinner's husband was not a matter entirely personal to him. He was at the school to return school property. Therefore, Skinner's activity in helping her husband was not outside the course of her employment. Skinner was in the process of helping a coworker perform work for the District, and the work was done in a good faith attempt to assist a coworker with the implied authorization of the District. See *Brown v. Leavitt Lane Farm*, 215 Neb. 522, 340 N.W.2d 4 (1983).

Whether Skinner was an invitee or a licensee is a question of fact. See *McIntosh v. Omaha Public Schools*, 249 Neb. 529, 544 N.W.2d 502 (1996). The trial court found that Skinner was an invitee. An invitee is a person who goes on the premises of another in answer to the express or implied invitation of the owner or occupant on the business of the owner or occupant or for their mutual advantage. See *Derr v. Columbus Convention Ctr.*, 258 Neb. 537, 604 N.W.2d 414 (2000). If the invitation relates to the business of the one who gives it, or is given for the mutual advantage of a business nature for both parties, the party receiving the invitation is an invitee. See *Palmtag v. Gartner Constr. Co.*, 245 Neb. 405, 513 N.W.2d 495 (1994). An invitation to a business visitor need not be express, as an invitation is inferred where there is a common interest or mutual advantage. See *id.* An "invitation," as a layperson might use the term in ordinary affairs of life, is not required for one to be an invitee as the term is used in law. See *Lindelow v. Peter Kiewit Sons', Inc.*, 174 Neb. 1, 115 N.W.2d 776 (1962).

In my opinion, Skinner cannot be an invitee and also be excluded from the provisions of the Nebraska Workers' Compensation Act. When the trial court determined that Skinner was an invitee, it had to conclude that Skinner was on the premises for the mutual benefit of Skinner and the District. In fact, the majority concludes that the record supports the trial court's finding that Skinner's visit to the school was to the mutual advantage of Skinner and the District.

Skinner, as an employee of the District, was injured in the course and scope of her employment with the District. The

purpose of her visit to the school was to return school property, which was a part of her husband's duties as the District's band director, and the return of the property was in furtherance of the interests of the District. Since Skinner was assisting her husband in this endeavor, I would conclude that she was in fact covered under the Nebraska Workers' Compensation Act and that the act is her exclusive remedy.

On the other hand, a licensee is on the premises of another for the licensee's own interest or gratification. Such person is exercising the privilege solely for that person's own convenience and benefit and does not stand in any contractual relation with the owner of the premises. See *Malolepszy v. Central Market*, 143 Neb. 356, 9 N.W.2d 474 (1943). Skinner was not found to be a licensee.

I would reverse the judgment of the district court and remand the cause with directions to dismiss.

CONNOLLY, J., joins in this dissent.