from the fair market value of the vehicle. The county court's determination is supported by competent evidence and is neither arbitrary, capricious, nor unreasonable. As such, we accept the factual finding of the county court on this issue.

## VI. CONCLUSION

Having determined that we have jurisdiction over this appeal, we find that the decision of the county court conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable. As a result, the decision of the county court is affirmed.

AFFIRMED.

———————

DONALD L. BRITTAIN, APPELLANT, V. H & H
CHEVROLET LLC AND MID-CENTURY
INSURANCE COMPANY, APPELLEES.

___ N.W.2d ___

Filed April 29, 2014.    No. A-13-384.

1. **Workers' Compensation: Appeal and Error.** In determining whether to affirm, modify, reverse, or set aside a judgment of the Workers' Compensation Court, a higher appellate court reviews the trial judge's findings of fact, which will not be disturbed unless clearly wrong.
2. **Workers' Compensation: Judgments: Appeal and Error.** Where there is no factual dispute, the question of whether the injury arose out of and in the course of employment is clearly one of law, in connection with which a reviewing court has an obligation to reach its own conclusions independent of those reached by the inferior courts.
3. **Employer and Employee.** An activity is related to the employment if it carries out the employer's purposes or advances its interests directly or indirectly.
4. **Appeal and Error.** An appellate court is not obligated to engage in an analysis that is not necessary to adjudicate the controversy before it.

Appeal from the Workers' Compensation Court: DANIEL R. FRIDRICH, Judge. Affirmed.

Joseph W. Grant and Michael R. Peterson, of Hotz, Weaver, Flood, Breitkreutz & Grant, for appellant.

Stacy L. Morris, of Lamson, Dugan & Murray, L.L.P., for appellees.

INBODY, Chief Judge, and PIRTLE and RIEDMANN, Judges.

PIRTLE, Judge.

## INTRODUCTION

Donald L. Brittain appeals the order of dismissal issued by the Nebraska Workers' Compensation Court on April 10, 2013, in which the court found that Brittain's injury did not occur in the scope and course of his employment and that his injury did not arise out of his employment with H & H Chevrolet LLC (H&H). For the reasons that follow, we affirm.

## BACKGROUND

Brittain worked as a lot porter for H&H, an automobile dealership located in Omaha, Nebraska. The owners of H&H purchased the dealership in January 2010, but Brittain had worked at the dealership's location for approximately 7 or 8 years. One of his job duties was to remove trash from the service building and dispose of it in Dumpsters located on the premises. Other duties included washing cars, sweeping floors, and driving people to locations and picking them up.

Brittain had a hobby which included scavenging discarded metal from various sources and selling it to a local scrapyard. He stored the metal in his home for approximately 3 months and then sold the metal to a recycling center, making about $20 to $30 per load.

On the morning of February 27, 2012, Brittain loaded a cart with two trash cans from the service building and wheeled the cart across the parking lot to a Dumpster. While dumping the trash, Brittain noticed a piece of metal in one of the trash cans. Brittain decided to salvage the piece of metal he found in the trash can that morning. He removed it from the can and began wheeling the cart back toward the service building.

Brittain stopped at his personal vehicle, a truck, to load the metal so he could take it home and sell it. Brittain stopped the cart near the front of his truck. Brittain testified that the parking lot was clear of snow and ice that day, except for the area near the back of his truck where H&H had piled plowed snow. Despite the snow and ice, Brittain walked toward the back of his truck to deposit the metal in the truck bed. Brittain's

onsite incident report stated he stood on a "block of ice" while trying to put something in the truck bed. He testified he unlocked the sliding back gate on his truck, put the metal in the truck bed, closed the gate, and locked it.

As Brittain finished loading the metal, he turned to go back to the front of the truck when he "caught some ice" and fell to the ground. He called on his radio for help, and a coworker responded. Brittain was found lying near his truck. Brittain told the worker that he had slipped and fallen on a "little chunk of ice." The worker called for medical attention, and Brittain sought treatment for an injury to his right hip. Brittain testified that had he not stopped to put this piece of metal in his truck, he would not have fallen.

Brittain had surgery to replace his right hip on May 23, 2012. Brittain testified that this hip had been giving him some discomfort prior to the fall and that it affected the way he made certain motions. Brittain previously had both hips replaced in 1988, and he had suffered a fall in 2009, after which he complained of hip pain.

Brittain was terminated from his employment with H&H after his 12 weeks of family medical leave expired. There was no reason disclosed by H&H for ending his employment, and he was not otherwise disciplined in relation to his fall.

H&H's employee handbook included provisions prohibiting "outside employment" and taking "new and used parts" from the premises. Brittain stated that he is unable to read very well, but that he had his wife read the handbook to him. He signed an acknowledgment that he had read and would abide by the terms of the handbook. He testified he did not feel he was breaking any rules by removing the metal pieces from the H&H premises.

Brittain further testified that an employee named "John" recycled items from H&H. Brittain stated that he never talked to John about it, but that he knew John was taking metal from H&H because he watched John load the metal into his car. Brittain testified that he did not seek permission from H&H to do the same.

Steve Hinchcliff, the president and chief executive officer of H&H, testified that John was an employee who worked for

a different dealership prior to H&H's purchase of that business. Hinchcliff testified that John had specifically sought permission to recycle certain metal parts as he continued his employment with H&H. Hinchcliff testified that John was allowed to take certain metal items, on his own time, with permission. Hinchcliff testified that there were no other employees, to his knowledge, who asked for, or were given, the same permission. He testified that Brittain did not have permission to remove parts from the premises.

Brittain sought workers' compensation benefits for temporary total disability; past, current, and future hospital and medical expenses; penalties; interest; and attorney fees.

The parties stipulated that Brittain was an employee of H&H on February 27, 2012; Douglas County was the proper venue for this case; Brittain's average weekly wage was $381; and he provided notice of the accident as required by Neb. Rev. Stat. § 48-133 (Reissue 2010).

The Workers' Compensation Court issued an order of dismissal on April 10, 2013. The court found Brittain had no work-related business for being at his truck on his way back from emptying the trash cans. The court found that Brittain knew there was ice by his truck and chose to stop there, even though there was no ice anywhere else in the lot. The court further found Brittain substantially deviated from his employment and was no longer in the course and scope of his employment when he was injured, and the court dismissed Brittain's petition with prejudice. Brittain timely appeals.

## ASSIGNMENTS OF ERROR

Brittain asserts the court erred in finding that the accident did not occur in the scope and course of his employment and that his injury did not arise out of his employment. Brittain also asserts the court erred in failing to award temporary disability benefits, hospital and medical benefits, penalties, interest, and attorney fees.

## STANDARD OF REVIEW

[1] In determining whether to affirm, modify, reverse, or set aside a judgment of the Workers' Compensation Court, a

higher appellate court reviews the trial judge's findings of fact, which will not be disturbed unless clearly wrong. *Cervantes v. Omaha Steel Castings Co*., 20 Neb. App. 695, 831 N.W.2d 709 (2013).

[2] Where there is no factual dispute, the question of whether the injury arose out of and in the course of employment is clearly one of law, in connection with which a reviewing court has an obligation to reach its own conclusions independent of those reached by the inferior courts. *Misek v. CNG Financial*, 265 Neb. 837, 660 N.W.2d 495 (2003).

## ANALYSIS

According to the Nebraska Revised Statutes:

> When personal injury is caused to an employee by accident or occupational disease, arising out of and in the course of his or her employment, such employee shall receive compensation therefor from his or her employer if the employee was not willfully negligent at the time of receiving such injury.

Neb. Rev. Stat. § 48-101 (Reissue 2010).

Brittain asserts the trial court erred in finding his injury was not compensable, because the trial court found the accident did not arise out of his employment nor did the accident occur in the course of his employment with H&H.

*Course of Employment*.

The "in the course of" requirement of § 48-101 has been defined as testing the work connection as to the time, place, and activity; that is, it demands that the injury be shown to have arisen within the time and space boundaries of the employment, and in the course of an activity whose purpose is related to the employment. *Misek v. CNG Financial*, *supra*; *Skinner v. Ogallala Pub. Sch. Dist. No. 1*, 262 Neb. 387, 631 N.W.2d 510 (2001).

Here, the court reasoned that Brittain had "no work[-]related business for being at his truck," as he stopped at his truck to drop off the scrap metal he intended to sell. The court stated that straying from the path between the service center and the Dumpster constituted a substantial deviation from Brittain's

employment, because the task was performed for personal benefit rather than to fulfill the requirements of his position at H&H.

Brittain asserts that he was performing the duties of his position by removing the trash, putting some in the Dumpster, and putting the metal scraps into his truck. Brittain also asserts that he was not violating specific instructions, that he was still fulfilling the duties of his position, and that therefore, his actions at the time of his fall were incident to his employment.

[3] An activity is related to the employment if it carries out the employer's purposes or advances its interests directly or indirectly. *Skinner v. Ogallala Pub. Sch. Dist. No. 1, supra.* It is undisputed that Brittain's job duties did not include removing scrap metal from the premises and selling them for his personal gain. Brittain testified that he was "supposed to" take H&H's trash to the Dumpster but that if he found "something in it," he would remove it from the bin, dump the trash out, and then wheel that item back toward his truck.

Brittain asserts he was doing exactly the same thing as another employee, John, who recycled scrap metal from H&H. H&H's president, Hinchcliff, testified that John asked for and was granted specific permission by H&H's management to remove certain metal items from the premises on his own time. Hinchcliff testified that this was not a common practice and that to his knowledge, John was the only employee who had been granted permission to do so. Hinchcliff testified that H&H's management personnel were not aware of Brittain's practice of removing scrap metal and that Brittain was not granted permission to do so, especially during working hours. Hinchcliff's testimony indicated that the type of recycling that Brittain and John engaged in, if undertaken during working hours, would be considered a second job and would be impermissible for H&H employees according to the employee handbook.

Upon our review, we agree with the court's assessment that Brittain had no work-related reason to go to his truck or to load any materials into his truck. While he did this during his working hours, the activity had no purpose related to his

employment, and the act was for his own personal benefit, not for the benefit of H&H. We find Brittain's injury did not arise in the course of his employment with H&H.

### Arising Out of Employment.

[4] The test to determine whether an act or conduct of an employee is compensable under the Nebraska Workers' Compensation Act has two prongs. We found that Brittain failed to meet the requirements of one prong—proving the injury arose in the scope and course of his employment. Therefore, we decline to address the second prong of whether Brittain's injury arose out of his employment. An appellate court is not obligated to engage in an analysis that is not necessary to adjudicate the controversy before it. *Holdsworth v. Greenwood Farmers Co-op*, 286 Neb. 49, 835 N.W.2d 30 (2013).

### Denial of Workers' Compensation Benefits.

Brittain asserts the court erred in failing to award temporary disability benefits, hospital and medical benefits, penalties, interest, and attorney fees.

The Workers' Compensation Court acknowledged the outcome of this case was a "close call." However, after our independent review of the evidence, we cannot find the court's conclusion was clearly wrong.

Thus, we find the court did not err in denying Brittain's requests for temporary disability benefits, hospital and medical benefits, penalties, interest, and attorney fees, because the fall does not fit within the definition of a compensable injury under § 48-101.

### CONCLUSION

The Workers' Compensation Court was not clearly wrong in finding Brittain's injury did not occur in the course of his employment with H&H. We affirm the lower court's order of dismissal.

Affirmed.